COMMONWEALTH *vs.* GREGORY A. RABB.

Plymouth. January 7, 2000. - March 27, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Controlled Substances. Practice, Criminal,* Double jeopardy. *Constitutional Law,* Double jeopardy. *Statute,* Construction.

Principles of double jeopardy did not operate to bar the prosecution in Superior Court of an indictment alleging the defendant trafficked in a certain amount of cocaine, seized pursuant to a search warrant at a motel unit rented by the defendant, after prosecution of him in the District Court on complaints for possession of cocaine and possession with intent to distribute cocaine involving a separate quantity of cocaine seized from the defendant on the same day pursuant to another search warrant executed at a separate location. [126-132]
A defendant seeking reversal of a conviction on double jeopardy grounds did not demonstrate that his two convictions were based on the same evidence. [132-133]

INDICTMENT found and returned in the Superior Court Department on May 2, 1994.

A motion for postconviction relief was heard by *Patrick F. Brady,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Gail M. McKenna,* Assistant District Attorney, for the Commonwealth.

*Carlo A. Obligato,* Committee for Public Counsel Services, for the defendant.

GREANEY, J. A jury in the Superior Court convicted the defendant of trafficking in cocaine in an amount of one hundred grams or more, but less than 200 grams, G. L. c. 94C, § 32E (*b*) (3). The defendant moved pursuant to Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979), for a required finding and to set aside the verdict, asserting that his guilty plea to a charge of possession of cocaine with intent to distribute in a District Court, prior to the trial of the trafficking indictment in the

Superior Court, barred prosecution of the indictment under principles of double jeopardy. The trial judge, in a written memorandum of decision, agreed with the defendant and ordered the trafficking conviction vacated, the jury verdict set aside, and the entry of judgment for the defendant. The Commonwealth appealed, and we granted the defendant's application for direct appellate review. We conclude that the defendant's conviction should not have been vacated. Accordingly, we vacate the judgment of acquittal and reinstate the judgment of conviction.

The pertinent background is as follows. As a result of an approximately two-year investigation that included surveillance of a house at 31 Seaview Street in Plymouth, and the Bay View Motel in Kingston, Detective William E. Curtis of the Plymouth police department obtained two warrants to search these locations. During the course of the investigation, Detective Curtis on many occasions had seen the defendant's car at the Bay View Motel, and the defendant at 31 Seaview Street. The 31 Seaview Street address was notorious for cocaine sales; police previously had executed warrants and made arrests there.

The search warrants were executed on February 1, 1994, by law enforcement officers of the Plymouth police, the Kingston police, and the State police. The officers executed the first warrant at 31 Seaview Street. There, the police arrested the occupants, including the defendant and Maurice Wynn, his cousin. The defendant did not have any drugs or money on his person. Near him on the floor, however, the police seized "a couple of rocks" of crack cocaine and numerous empty wrappers. The police seized fourteen rocks of crack cocaine and $878 in cash from Wynn. The crack cocaine was separately packaged in "corner bags."[1] The police also seized cocaine and cash from other occupants. Elsewhere in the house, the police seized empty crack wrappers, crack pipes, two pagers, a portable radio, and a "charging unit." After being arrested, the defendant, Wynn, and other occupants were brought to the Plymouth police station.

The police executed the second search warrant at the Bay View Motel. Police Chief Gordon Fogg, who was a detective at the time of the defendant's arrest, and Detective Richard Arruda of the Kingston police showed the search warrant to the motel's owner and received the key to unit no. 6. For more than three

---

[1]A "corner bag" is a corner of a sandwich bag that is tied off and cut.

months, the defendant had paid $150 in cash each week for the unit, using ten and twenty dollar bills. Inside unit no. 6, the police seized a plastic bag containing 331 pieces of individually wrapped crack cocaine from inside a wall heater. This crack cocaine weighed 82.05 grams and was eighty-nine per cent pure. The police also seized a plastic bag containing 159 pieces of individually wrapped crack cocaine, in corner bags, from the bottom of a cereal box located in the kitchenette. This crack cocaine weighed 31.02 grams and was ninety per cent pure. The police also found a portable radio, which was tuned to the same frequency as the portable radio seized at 31 Seaview Street.

After returning to the Plymouth police station, the police were told that the defendant wanted to speak with them. Detective Curtis brought the defendant to the detectives' office. Chief Fogg and Detective Arruda were also present. Fogg read the defendant his Miranda rights, and the defendant stated he understood them. Fogg showed the defendant the crack cocaine seized from the motel, and the defendant said, "You got me." The defendant told the officers that he did not want to go to jail for ten years because he had three children, and offered to supply the police with drugs, guns, and "bad cops" in exchange for a deal.

The defendant also told the officers that his cousin, Wynn, wanted to talk with them. Wynn was brought to the office and Detective Curtis read him his rights. The defendant asked Chief Fogg to show Wynn the crack cocaine seized from the motel, and told Wynn that the officers had the crack and had "him good." The defendant stated that he owned the crack cocaine seized from the wall heater in the motel, and that Wynn owned the crack cocaine seized from the cereal box also in the motel. He also stated that he and Wynn had separately purchased their respective cocaine. The defendant said he purchased his crack cocaine from a location in the Dorchester section of Boston, prepackaged and ready for sale. He stated that he stayed at the motel a few days every week, long enough to sell the cocaine in the area. The defendant stated that he did not sell the crack out of the motel room, but rather, sold it in Plymouth. The defendant also indicated that his crack cocaine (seized from the wall heater) cost him $3,200, and he expected to make $7,000 on its resale. Wynn stated that the crack seized from the cereal box cost him $1,400, and he expected to make $3,000 on its resale.

The defendant was charged by a complaint in the Plymouth

Division of the District Court Department with possession of cocaine, G. L. c. 94C, § 34, and possession with intent to distribute cocaine, G. L. c. 94C, § 32A (a). These charges were based on the cocaine seized in the search at 31 Seaview Street. Subsequently, a Plymouth County grand jury returned the indictment against the defendant with which we are concerned, charging him with trafficking in one hundred but less than 200 grams of cocaine.[2] The indictment was based on the cocaine seized in the search of the defendant's unit at the Bay View Motel. The defendant entered guilty pleas on May 23, 1996, to the District Court charges of possession and possession with intent to distribute, and was sentenced to concurrent terms of imprisonment in a house of correction. In September, 1996, he was tried before a jury in the Superior Court on the trafficking charge. The jury found him guilty, and he was sentenced, as required by G. L. c. 94C, § 32E (b) (3), to the mandatory minimum term of ten years.

Following this conviction, the defendant refiled his motion for a required finding of not guilty, asserting, as he had before,[3] that his prosecution for trafficking in cocaine was barred by principles of double jeopardy. The judge allowed the motion, reasoning in his memorandum that, "where it is evident that the [defendant's] cocaine found in Plymouth and the 113 grams found in Kingston constitute a single stash of drugs with respect to which [the defendant] bore an identical intent, to sell them via an established warehouse/retail scheme, the defendant has engaged in one continuous offense of possession with intent to distribute in violation of [G. L.] c. 94C, § 32E, and the Commonwealth cannot divide that single continuous possession of the stash into separate offenses without violating the double jeopardy clause." Thus, the judge concluded that the defendant's "District Court conviction [of] possession with intent to distribute barred his later conviction [in the Superior Court] of trafficking [in cocaine]."[4]

1. We agree with the Commonwealth that the defendant was

---

[2]The District Court did not have jurisdiction over this offense. See G. L. c. 218, § 26.

[3]The defendant's trial counsel preserved the defendant's rights on the double jeopardy issue throughout the proceedings by filing a pretrial motion to dismiss, which was denied, and motions for a required finding of not guilty during the trial, which were denied.

[4]We note here that the case was not tried before the jury on the "separate stashes" issue. The Commonwealth's theory at trial was that the defendant

not exposed to double jeopardy. That doctrine prohibits prosecuting or punishing a defendant twice for the same offense. See *Commonwealth* v. *Cassidy*, 410 Mass. 174, 176 (1991); *Commonwealth* v. *Levia*, 385 Mass. 345, 347 (1982). See also *Kuklis* v. *Commonwealth*, 361 Mass. 302, 305 (1972) ("Where there is identity between two charges, the imposition of two sentences results in two punishments for the same offense"). In cases of successive prosecutions of a defendant, an identity of charges occurs if "the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other." *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871). This test, which we have adopted as a rule of Massachusetts common law, was applied by the United States Supreme Court in *Blockburger* v. *United States*, 284 U.S. 299, 304 (1932), to determine, under the double jeopardy clause of the Fifth Amendment to the United States Constitution, whether a defendant has been improperly punished multiple times for the same offense.

The test, however, does not apply to this case because it governs a situation where a defendant has multiple convictions for violating different statutory provisions. See *id.* See also *Rashad* v. *Burt*, 108 F.3d 677, 679 (6th Cir. 1997), cert. denied, 522 U.S. 1075 (1998) ("the *Blockburger* test is insufficient where . . . the concern is not multiple charges under separate

---

either constructively possessed all the cocaine seized at the motel in Kingston or was culpable for the full amount as a joint venturer with Maurice Wynn. The Commonwealth characterized the transactions in the two locations as involving the movement of cocaine from Kingston (where the prosecutor said it was warehoused) to Plymouth (where the prosecutor argued it was sold). The defense at trial was that the defendant and Wynn acted independently of each other, and that the defendant dealt only with the cocaine found in the wall heater (82.05 grams), while Wynn was solely responsible for the cocaine found in the cereal box (31.02 grams). Based on this strategy, the defendant's trial counsel argued to the jury that the defendant should be found "guilty of [the] amount over [twenty-eight] grams, under [one hundred]." This was a reference to the crime charged by G. L. c. 94C, § 32E (*b*) (2), which punishes trafficking in twenty-eight or more grams of cocaine, but less than one hundred grams. That crime calls for a less severe mandatory minimum sentence, and the offense was before the jury on their verdict form as a lesser included offense. The jury found the defendant guilty as charged of the more serious trafficking offense, expressly finding that he constructively possessed all the cocaine seized at the motel. The double jeopardy question was properly preserved as a question of law for the judge to decide, based on the entire record, including the defendant's District Court conviction of possession of cocaine with intent to distribute.

statutes, but rather successive prosecutions for conduct that may constitute the same act or transaction"). As was pointed out by the Supreme Court of Washington in *State* v. *Adel*, 136 Wash. 2d 629, 633-634 (1998): "When a defendant is convicted for violating one statute multiple times, the same evidence test will never be satisfied. . . . [T]he same evidence test asks whether the convicted offenses are the same in law and the same in fact. Two convictions for violating the same statute will always be the same in law, but they will never be the same in fact. In charging two violations of the same statute, the prosecutor will always attempt to distinguish the two charges by dividing the evidence supporting each charge into distinct segments."

The appropriate inquiry in a case like this, involving criminal proceedings under intrinsically related controlled substances statutes, asks what "unit of prosecution" was intended by the Legislature as the punishable act. See *Commonwealth* v. *Donovan*, 395 Mass. 20, 28-29 (1985); *Commonwealth* v. *Gurney*, 13 Mass. App. Ct. 391, 401 (1982). The inquiry requires us to look to the language and purpose of the statutes, to see whether they speak directly to the issue of the appropriate unit of prosecution, and if they do not, to ascertain that unit, keeping in mind that any ambiguity that arises in the process must be resolved, under the rule of lenity, in the defendant's favor. See *Bell* v. *United States*, 349 U.S. 81, 83 (1955); *Commonwealth* v. *Donovan, supra* at 29. We undertake the exercise because the possibility of double jeopardy is present here (and was actually found by the judge) because convictions under trafficking in cocaine and possession of cocaine with intent to distribute, a lesser included offense, are improperly duplicative when based on the same acts performed with the same cocaine. See *Commonwealth* v. *Chappee*, 397 Mass. 508, 523 (1986). The statutes at issue here, G. L. c. 94C, § 32A (*a*) (possession of cocaine with intent to distribute), and G. L. c. 94C, § 32E (*b*) (3) (trafficking in one hundred to 200 grams of cocaine), do not specifically define the appropriate unit of prosecution. But, there is case law that assists in the answer.

In *Commonwealth* v. *Diaz*, 383 Mass. 73, 82-85 (1981), we held that a defendant convicted on two indictments under G. L. c. 94C, § 32, one charging unlawful distribution of heroin, and the other charging possession of heroin with intent to distribute, did not establish a double jeopardy violation where the charges were based on facts showing that the defendant possessed

distinct quantities of heroin. Thus, we concluded that two charges were appropriate because "separate items [were] involved in the respective charges: the defendant had completed one heroin sale, and was holding a separate cache of the drug for future distributions." *Id.* at 84. We went on to state that our drug statutes do not "describe an offense of maintaining a drug business, which might be proved by a number of acts of possession and sale; rather the statutes denounce particular acts stated disjunctively. This is indicative of the appropriate unit for purposes of punishment." *Id.* at 84-85. Similarly, in *Commonwealth* v. *Richardson*, 37 Mass. App. Ct. 482, 489 (1994), the Appeals Court stated: "Trafficking and distribution of cocaine are not so closely related as to prevent conviction and punishment for both, so long as separate and distinct quantities of cocaine underlie the two charges; the Legislature intended to punish the distribution of one quantity of a drug separately from possession with intent to distribute the dealer's remaining stash." The various statutes compiled in G. L. c. 94C, making unlawful possession, possession with intent to distribute, and distributing (or trafficking in) various types of controlled substances, therefore, are meant to punish discrete criminal acts. We conclude that, in a case like this, two charges for any of the proscribed conduct, including two charges of possession with intent to distribute, may be properly brought, as long as the specified controlled substance supporting one charge constitutes a quantity separate and distinct from the quantity supporting the other charge.

The defendant argues, and the judge agreed, that the cocaine seized from the house and from the motel did not constitute two separate quantities for purposes of units of prosecution because the defendant was distributing a single quantity of cocaine as part of one continuous enterprise. This conclusion took too broad a view of the defendant's conduct. As has been stated, G. L. c. 94C, § 32E, punishes discrete criminal acts, without regard to whether the acts together constitute the running of a drug business. The crime of possession of a specific controlled substance is not always one continuous crime which requires a prosecutor to aggregate all of the controlled substance possessed by a defendant in his criminal venture.[5] If separate and distinct quantities of the same substance are involved in the

---

[5]The prosecutor did have discretion, where both jurisdictions were in Plymouth county, to dismiss the charges brought against the defendant in the

charges, there will be no situation such as the one that occurred in *Kuklis* v. *Commonwealth, supra* at 307-308, where the defendant's three convictions (being present where marijuana was kept; possession of marijuana; and possession of marijuana with intent to distribute) violated double jeopardy protections because they were all based on acts performed with the "identical mass of a single drug." See *Commonwealth* v. *Clemmons,* 370 Mass. 288, 293-294 (1976); *United States* v. *Fiallo-Jacome,* 784 F.2d 1064, 1066-1067 (11th Cir. 1986) (multiple prosecutions duplicative when based on "one continuous possession" of the same identical quantity of controlled drug). As *Commonwealth* v. *Diaz, supra* at 82-85, makes clear, to obtain two convictions of a defendant under G. L. c. 94C, § 32E, the Commonwealth is required to prove only that the amount of the specific controlled substance supporting each conviction constitutes a "separate item[]." *Id.* at 84. *Commonwealth* v. *Richardson, supra* at 489, makes the same point.

This approach was more expansively stated in *Rashad* v. *Burt, supra* at 681. There, the court outlined various considerations for identifying when separate quantities of drugs exist to justify two or more charges: "Generally, courts which have considered the issue [of multiple prosecutions under controlled substance statutes] have determined that separate convictions for possession of the same controlled substance [with an intent to distribute] will not violate the Double Jeopardy Clause if the possessions are sufficiently differentiated by time, location, or intended purpose." *Id.* We agree with this formulation and point out that the considerations mentioned are meant to be disjunctive, with no one determinative factor. See, e.g., *United States* v. *Johnson,* 977 F.2d 1360, 1374 (10th Cir. 1992), cert. denied sub nom. *Behrens* v. *United States,* 506 U.S. 1070 (1993) (separate

District Court and charge the defendant in the Superior Court in one indictment that combined the two quantities of cocaine. The aggregation of separate quantities of a controlled substance found to be in a defendant's possession (or constructive possession) at one time, is a lawful enforcement procedure (although the procedure may be subject to limitations imposed by the Legislature as to Massachusetts courts both in terms of subject matter jurisdiction and geographical jurisdiction). See *Commonwealth* v. *Ortiz, post* 134, 138 (2000). "Prosecutors have wide ranges of discretion in deciding whether to bring criminal charges and in deciding what specific charges to bring." *Cedeno* v. *Commonwealth,* 404 Mass. 190, 196-197 (1989). Double jeopardy principles, as applicable to the problem before us, require only that, should a prosecutor choose to bring separate charges, each charge must be based on a separate and distinct quantity of a specific controlled substance.

convictions warranted based on defendant's possessions for different purposes); *United States* v. *Vaughn*, 859 F.2d 863, 865 (11th Cir. 1988), cert. denied, 490 U.S. 1065 (1989) (separate convictions warranted based on defendant's possessions on different dates); *United States* v. *Maldonado*, 849 F.2d 522, 524 (11th Cir. 1988) (separate convictions warranted based on defendant's possession of different quantities in different counties).[6]

Here, the evidence disclosed that the defendant possessed at the house in Plymouth cocaine that was being actively sold to buyers who came to the premises. At the same time, the defendant possessed cocaine at his motel room in Kingston intended for future sales. The defendant's possessions were sufficiently differentiated both by location and by purpose. The defendant was engaged in a drug business. But, as we know from *Commonwealth* v. *Diaz, supra*, for double jeopardy considerations, we need not be concerned with whether a defendant's pattern of dealing in a specific controlled substance might be characterized as a "business."[7] We conclude that the defendant possessed two separate quantities of cocaine that

---

[6]The prosecutor did not charge the defendant separately for possession of the cocaine found in the motel inside the heater and possession of the cocaine found in the cereal box. We need not decide whether multiple amounts of a controlled substance, virtually identical in quality, hidden separately at one location, constitute separate and distinct quantities for purposes of prosecution, beyond noting that separate charges in such a situation would be problematic.

[7]The defendant's claim that the Commonwealth acted disingenuously when it "changed [its] theory of prosecution" (arguing at trial that the defendant was involved in a drug distribution ring, the motel room used as a warehouse to store cocaine later sold from the house, but arguing on appeal that the cocaine seized in the motel room had no connection to the cocaine seized in the house) is of no legal consequence. The Commonwealth's evidence of a warehouse-retail store operation was relevant to prove the defendant's constructive possession of the cocaine stored in the cereal box, that the defendant maintained belonged solely to Wynn, as well as to prove the Commonwealth's theory of joint enterprise. The Commonwealth may argue on appeal that the cocaine seized from the house was a different quantity from the cocaine hidden in the motel, because this evidence is relevant to prove that the two quantities of cocaine were separate and distinct for double jeopardy considerations. This issue is a question of law, and properly was not before the jury at trial. This is not a case, as the defendant suggests, such as *Commonwealth* v. *Longo*, 402 Mass. 482, 486 n.4 (1988), or *Cola* v. *Reardon*, 787 F.2d 681, 697 (1st Cir.), cert. denied, 479 U.S. 930 (1986), where the Commonwealth's appellate theory was based on evidence not considered by the jury.

were sufficiently distinct from each other to create different units of prosecution and, therefore, to allow his prosecution, without violating double jeopardy, on both the possession with intent to distribute complaint brought in the Plymouth District Court and the trafficking indictment brought in the Superior Court.

2. What has been said disposes of the defendant's primary arguments. We turn now to his remaining assertion that his conviction in District Court may have been based on evidence relating to the cocaine found in the motel. (The defendant may claim this possibility because no record exists of the facts involved in the defendant's guilty pleas.) Thus, the defendant suggests that double jeopardy bars his subsequent conviction in the Superior Court that may have been based on the same evidence. We do not agree. The defendant suggests that his guilty pleas must have involved admitting the intent to distribute the quantity of cocaine found in the motel room because he would not have admitted constructive possession of the drugs found on Wynn. The argument is not persuasive.[8] The District Court complaint charged the defendant with offenses that took place in Plymouth. In addition, the judge concluded, in his memorandum on the defendant's posttrial motion, that the defendant entered guilty pleas in the District Court to charges of possession of cocaine and possession of cocaine with intent to distribute that were based on the cocaine seized from the house in Plymouth. Although there is no record of the exact words spoken when the defendant's pleas were offered and accepted, because the tape recording of the District Court proceedings is no longer available,[9] the fact that the District Court judge accepted the defendant's pleas makes it certain that the defendant admitted under oath facts that proved, to the plea judge's satisfaction, that the defendant constructively possessed the cocaine found in the house. Cf. *Burns* v. *Commonwealth*,

---

[8]The defendant reasons that it would be a "legal anomaly" for him to have pleaded guilty to possession with intent to distribute cocaine (found on Wynn's person), for which Wynn was never prosecuted (charges brought against Wynn in the District Court were dismissed according to the defendant), and that it would violate "basic notions of fundamental fairness [for this court] to allow, on this ambiguous record, as the exclusive basis for the defendant's conviction in the District Court, the uncharged conduct and overt acts of Maurice Wynn."

[9]The defendant, as the proponent of the double jeopardy claim, may have had the burden of presenting a reconstructed record.

430 Mass. 444, 447 n.4 (1999). This is not likely a case where doubt exists as to the basis of a jury's verdict, and the doubt must be resolved in a defendant's favor. See *Commonwealth* v. *Hrycenko*, 417 Mass. 309, 316-317 (1994). The defendant has failed to show that he made guilty pleas in the District Court to facts that formed the basis of his subsequent conviction in the Superior Court. His claim of double jeopardy on these grounds must fail.

3. The allowance of the defendant's motion for a required finding of not guilty and the judgment finding the defendant not guilty are vacated. The jury's verdict is reinstated. The sentence is to be imposed in the Superior Court.

*So ordered.*