COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Humphreys and Haley
Argued at Salem, Virginia


JIMMY ROGER LANE

v.      Record No. 1211-07-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROBERT P. FRANK
APRIL 15, 2008


FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
Keary R. Williams, Judge

David L. Epling for appellant.

Joshua M. Didlake, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Following the entry of conditional guilty pleas, the trial court convicted Jimmy Roger

Lane, appellant, of three counts of possession with the intent to distribute a Schedule II

controlled substance (one count for liquid oxycodone, one count for Endocet tablets, which

contained oxycodone, and one count for oxycodone tablets) and one count of possession with the

intent to distribute a Schedule III controlled substance, hydrocodone.  On appeal, appellant

contends the trial erred in (1) denying his motion to suppress, as the search warrant affidavit did

not sufficiently identify the reliability of the informant; and (2) denying his motion to dismiss or

consolidate the indictments for three counts of possession with the intent to distribute

oxycodone, arguing on double jeopardy grounds that he was convicted multiple times for a

single offense.[1]  For the reasons stated, we affirm in part and reverse in part, and remand this case to the trial court.[2]

## BACKGROUND

On June 3, 2005, narcotics investigator Raymond Webb with the Buchanan County Sheriff's Office filed an affidavit for a search warrant to search appellant's person and home for evidence of drug possession and/or distribution.  On the form affidavit provided by the sheriff's office, Webb averred that, "within the past 72 hours, a reliable informant has seen a large quantity of narcotics in the residence and on the person of [appellant]."  In the space provided to set forth the facts to determine the informant's credibility or reliability of the information, Webb recited that, "the reliable informant has given information in the past that has led to the seizure of illegal narcotics."

The magistrate issued a search warrant for appellant's residence based on Webb's affidavit.  Webb then proceeded to appellant's residence and executed the search warrant.

When Webb arrived at appellant's residence, he found appellant standing "on the front porch in the garage area."  Webb informed appellant that he was there to serve a search warrant, and appellant gave Webb consent to conduct a pat-down search.  During that search, Webb recovered "several different items in plastic baggies in [appellant's] pockets."

In appellant's right pocket, Webb found (1) a plastic bag containing sixty-two "round, green coated tablets," marked "OC" and "80," later determined to be oxycodone; (2) a plastic bag containing $638 of U.S. currency; (3) a plastic bag containing $3,490 in U.S. currency; and

---

[1] The only issue on appeal that relates to the conviction for hydrocodone is appellant's challenge to the search warrant; appellant's motion for consolidation or dismissal applied only to the three convictions involving oxycodone.

[2] Appellant also pled guilty to four counts of distribution.  However, appellant does not challenge those convictions on appeal.

(4) a plastic bag containing seventeen white, oblong tablets, later determined to be hydrocodone. In appellant's left pant pocket, Webb found: (1) $181 in U.S. currency; and (2) a plastic bag "containing twenty-eight white round tablets," later determined to be Endocet, a combination of oxycodone and acetaminophen that is a generic form of the drug Percoset.

During the search of appellant's residence, officers recovered a "plastic bottle with a dropper lid" containing 7.8 milliliters of liquid oxycodone in appellant's garage. The attached garage was approximately 15-20 feet from appellant's front porch.

At the hearing on the motion to suppress, Webb testified that "[w]e had made several buys from this residence in the past, plus the informant had been at this residence that day [when the search warrant was served] and observed a large quantity of narcotics." The informant personally purchased narcotics from appellant at that same residence on four different occasions.

Appellant moved to suppress all of the evidence recovered from his person and found inside of his home, arguing that the affidavit offered in support of the search warrant did not establish the reliability of the informant to a sufficient degree. Thus, appellant argued that the search warrant was issued without probable cause. Appellant also moved to consolidate or dismiss two of the three counts of possession with the intent to distribute that involved the liquid oxycodone, the oxycodone tablets, and the Endocet tablets. Appellant contended that double jeopardy prevented his prosecution on three separate charges for separate quantities of the same prohibited substance found at the same time.

In denying appellant's motion to suppress, the trial court determined the affidavit was sufficient to show probable cause, as Webb knew at the time he made the affidavit and executed the search warrant that the informant had purchased drugs from appellant four separate times. Regarding the double jeopardy argument, the trial court found that, because the Endocet tablets and the oxycodone tablets had different pharmaceutical compositions and were found in two

different pockets of appellant's pants, those two charges were distinguishable. The trial court

distinguished the liquid oxycodone based on the fact that it was found in a "separate location."

This appeal follows.

ANALYSIS

Motion to Suppress

"On appeal from a denial of a suppression motion, we must review the evidence in the

light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences."

Slayton v. Commonwealth, 41 Va. App. 101, 103, 582 S.E.2d 448, 449 (2003).

> An appellant's claim that evidence was seized in violation of the
> Fourth Amendment "presents a mixed question of law and fact that
> we review *de novo* on appeal. In making such a determination, we
> give deference to the factual findings of the trial court and
> independently determine whether the manner in which the
> evidence was obtained [violated] the Fourth Amendment."

Wilson v. Commonwealth, 45 Va. App. 193, 202-03, 609 S.E.2d 612, 616 (2005) (alteration in

original) (quoting Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002)).

On appeal, "we defer to the trial court's findings of 'historical fact' and give 'due weight to the

inferences drawn from those facts by resident judges and local law enforcement officers.'"

Barkley v. Commonwealth, 39 Va. App. 682, 690, 576 S.E.2d 234, 238 (2003) (quoting Davis v.

Commonwealth, 37 Va. App. 421, 429, 559 S.E.2d 374, 378 (2002)).

Appellant contends that the affidavit, which gave rise to the search warrant, was

insufficient to show the reliability of the informant. While not conceding the lack of probable

cause to issue the search warrant, the Commonwealth, in its brief, argues this Court need not

address probable cause since the "good faith exception" applies.[3]

---

[3] The trial court, in denying the motion to suppress, found the affidavit was sufficient to
establish probable cause for the issuance of the search warrant.

Assuming, without deciding, that "the warrant was not issued upon probable cause, evidence seized pursuant to the warrant is nevertheless admissible if the officer executing the warrant reasonably believed that the warrant was valid." Lanier v. Commonwealth, 10 Va. App. 541, 547, 394 S.E.2d 495, 499 (1990) (citing United States v. Leon, 468 U.S. 897, 918-21 (1984)) (other citations omitted). Thus, we will address only whether the good faith exception applies.

The United States Supreme Court has held that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." Leon, 468 U.S. at 918. "[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Id. at 916. "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." Id. at 921.

Under the good faith exception, "[w]here a police officer has an objectively reasonable belief that the issuing magistrate had probable cause to issue the search warrant, the officer may rely upon the magistrate's probable cause determination and the evidence will not be excluded." Colaw v. Commonwealth, 32 Va. App. 806, 810, 531 S.E.2d 31, 33 (2000).

> There are four circumstances, however, where an officer cannot have an objectively reasonable belief that probable cause exists for the search and suppression is an appropriate remedy: "(1) Where the magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit 'so lacking in indicia of probable cause' as to render official belief in its existence unreasonable or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid."

However, because we find that the good faith exception applies and the Commonwealth did not brief or argue that probable cause was present, we do not reach the question of whether the affidavit was based on probable cause.

- 5 -

Cunningham v. Commonwealth, 49 Va. App. 605, 618-19, 643 S.E.2d 514, 521 (2007) (quoting Colaw, 32 Va. App. at 811, 531 S.E.2d at 33).

Appellant contends that the third exception to the good faith rule applies, arguing that the underlying affidavit was "bare bones" and so lacking in indicia of probable cause that a reasonable police officer would not have believed that the warrant was valid. Specifically, appellant maintains that the information in the affidavit was not sufficient to establish the informant's reliability. We disagree.

When a confidential informant provides the basis for probable cause, there are two considerations that are particularly relevant to our analysis: (1) the veracity or reliability of the informant and (2) the informant's basis of knowledge. Illinois v. Gates, 462 U.S. 213, 230 (1983). Appellant does not challenge the informant's "basis of knowledge," but only the informant's veracity and reliability.

We have held that "as long as there is *some* indicia of probable cause in the underlying affidavit, we will apply the good faith exception [provided that] a reasonable police officer, after assessing the facts set forth in the affidavit, could have believed that the warrant was valid." Anzualda v. Commonwealth, 44 Va. App. 764, 781, 607 S.E.2d 749, 757 (2005) (*en banc*) (emphasis in original).

Thus, the pivotal question before us is whether a reasonable police officer, based on the facts set forth in the affidavit as to the informant's reliability, could have believed the warrant was valid.

Our decision in Tart v. Commonwealth, 17 Va. App. 384, 437 S.E.2d 219 (1993), is instructive. In Tart, police officers obtained a search warrant for a motel room where the defendant was staying. Id. at 386, 437 S.E.2d at 220. The search warrant was based on an affidavit containing information obtained from a confidential informant. Id. The affidavit

- 6 -

recited the following facts as to the informant's reliability: (1) that the informant was presently cooperating with police; (2) that the informant had personally observed and had contact with, in the last 72 hours, two men selling drugs in two particular motel rooms; and (3) that the informant was able to provide a detailed description of the two men. Id. at 386-87, 437 S.E.2d at 220-21. Nothing in the affidavit indicated the informant's prior history of reliability, or that the informant had given any information in the past that had led to an arrest or a conviction. Nevertheless, this Court held that the "good faith exception" applied, as

> [a]n objectively reasonable belief that probable cause existed was provided by [the officer's] sworn statement that a reliable and confidential informant visited the motel room within the past seventy two hours and observed a quantity of "crack" cocaine "cut up into small rocks[,"] that the confidential informant had contact with the occupants of Room 4 and Room 30 of the motel; and that these occupants "were associated in regard to the illegal possession of the cocaine."

Id. at 390, 437 S.E.2d at 223.

We conclude the facts in the subject affidavit were not "bare bones," but established the informant's reliability sufficiently enough to provide some indicia of probable cause. The affidavit averred that, "within the past 72 hours, a reliable informant has seen a large quantity of narcotics in the residence and on the person of Jimmy Lane" and further that this particular informant had "given information in the past that has led to the seizure of illegal narcotics." Here, as in Tart, it is apparent that the informant had personal contact with appellant, was present in appellant's home no more than 72 hours before the search warrant was issued, and had personally observed narcotics on appellant and in appellant's home at that time. Instead of only providing a description of the suspects, the informant here was able to provide appellant's name.

Additionally, unlike the affidavit in Tart, the affidavit in the instant case recited that the informant had a prior history of reliability, namely that he had provided information in the past that had led to the seizure of illegal narcotics. Manley v. Commonwealth, 211 Va. 146, 150, 176

- 7 -

S.E.2d 309, 313 (1970) ("The most commonly accepted and approved allegation to substantiate reliability is that the informer is a person of known and proven reliability and has furnished information to law enforcement officers which has been instrumental in procuring convictions."). While the affidavit does not indicate that the informant's past information had led to a specified number of arrests or convictions, the mere fact that the informant's past information has led to the seizure of illegal narcotics indicates that the past information has proven to be correct. Corey v. Commonwealth, 8 Va. App. 281, 288, 381 S.E.2d 19, 23 (1989) ("The reliability of any informant . . . can be demonstrated if the affidavit states that the informant has previously given information which has proven correct.").

Given that the informant has provided past information that has proven to be correct, that the informant was personally on the property that was the subject of the warrant within 72 hours, and that the informant personally observed narcotics at that property and on appellant's person, we conclude that the informant's reliability was sufficiently established to provide a reasonable officer with some indicia of probable cause to support a belief that the warrant was valid. Thus, we find that the affidavit was not "so lacking in indicia of probable cause" as to render official belief in its existence unreasonable. Accordingly, we affirm the trial court's denial of appellant's motion to suppress.

Motion to Dismiss or Consolidate Indictments

Appellant next contends that, regarding his convictions for possession with the intent to distribute Endocet, oxycodone tablets, and liquid oxycodone, the trial court erred in denying his motion to dismiss two of the indictments, or, in the alternative, to consolidate the three indictments into one count. Appellant argues that, as the three indictments involve the same

prohibited substance found at the same time, his conviction and punishment for three separate offenses violates the Double Jeopardy Clause of the Fifth Amendment.[4]

The Double Jeopardy Clause of the Fifth Amendment "'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" Brown v. Ohio, 432 U.S. 161, 165 (1977) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnotes omitted)). "Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." Id.

"'The issue of multiple punishments actually arises in two contexts. First, two or more statutes . . . proscribe . . . particular . . . conduct as criminal offenses. Second, . . . conduct may constitute more than one violation of a single criminal proscription.'" Shears v. Commonwealth, 23 Va. App. 394, 400, 477 S.E.2d 309, 312 (1996) (quoting Jordan v. Commonwealth, 2 Va. App. 590, 593, 347 S.E.2d 152, 154 (1986)). Here, appellant asserts that he was

---

[4] In its argument on brief, the Commonwealth maintains that appellant does not challenge the indictment charging possession with the intent to distribute Endocet. Thus, the Commonwealth addressed its argument only to the differences between the charges relating to the oxycodone tablets and the liquid oxycodone. In support of this proposition, the Commonwealth cites to the conclusion in appellant's brief where he states,

> In cases numbers 661-05, 662-05, and 663-05, the last two indictments violate the principals [sic] of multiple punishment contrary to the Double Jeopardy Clause of the United States Constitution. [Appellant] respectfully request [sic] that these cases be remanded to the Circuit Court of Buchanan County with orders to dismiss the last two indictments.

It is clear from reading this statement that appellant meant only to concede that *one* conviction for possession with the intent to distribute oxycodone would be proper; he maintains throughout his brief that two of those convictions are in violation of the Double Jeopardy Clause because the three charges should have been merged into one. The Commonwealth's interpretation is contrary to a plain reading of appellant's brief, and, thus, we will not address this argument on appeal.

unconstitutionally punished by convictions on three indictments arising from a single criminal enterprise, the possession of oxycodone with the intent to distribute in violation of Code § 18.2-248.[5]

"When considering multiple punishments for a single transaction, the controlling factor is legislative intent." Kelsoe v. Commonwealth, 226 Va. 197, 199, 308 S.E.2d 104, 104 (1983). The legislature "may determine the appropriate 'unit of prosecution' and set the penalty for separate violations." Jordan, 2 Va. App. at 594, 347 S.E.2d at 154. Therefore, although multiple offenses may be the "same," an accused may be subjected to legislatively "authorized cumulative punishments." Id. "It is judicial punishment in excess of legislative intent which offends the double jeopardy clause." Shears, 23 Va. App. at 401, 477 S.E.2d at 312.

> In enacting Code § 18.2-248, the General Assembly declared it "unlawful for any person to . . . sell, . . . or possess with intent to . . . sell . . . a controlled substance." Code § 18.2-248(A). Code § 18.2-248(C) prescribes the punishment for "any person who violates this section with respect to a controlled substance classified in Schedule I or II." The gravamen of the offense is clearly possession of the specified drug with the requisite intent. Thus, each distinguishable incident of the offending conduct constitutes a "unit of prosecution" for violation of the statute.

Id. (footnote omitted).[6]

"Courts of other jurisdictions [] have concluded it may be constitutionally permissible for a defendant to be convicted of more than one drug offense based upon the discovery of separate caches of drugs the defendant possessed with distinct purposes." Peake v. Commonwealth, 46 Va. App. 35, 41, 614 S.E.2d 672, 676 (2005).

> "Generally, courts which have considered the issue [of multiple prosecutions under controlled substance statutes] have determined

---

[5] Because appellant was tried simultaneously on all three indictments, multiple prosecution for a single act or offense is not in issue. Clagett v. Commonwealth, 252 Va. 79, 95, 472 S.E.2d 263, 272 (1996).

[6] Oxycodone is a Schedule II controlled substance. Code § 54.1-3448.

- 10 -

that separate convictions for possession of the same controlled substance [with the intent to distribute] will not violate the Double Jeopardy Clause if the possessions are sufficiently differentiated by time, location, or intended purpose."

Id. (quoting Commonwealth v. Rabb, 725 N.E.2d 1036, 1043 (Mass. 2000)). "The considerations of time, location, and intended purpose 'are meant to be disjunctive, with no one determinative factor.'" Id. (quoting Rabb, 725 N.E.2d at 1043). "'[A] determination of the existence of separate stashes is not constrained by any particular measure of spatial or temporal distance. The proper focus of a "separate stash" inquiry is not on logistics but on demonstrated intent.'" Id. (quoting United States v. Smith, 50 M.J. 813, 815 (A.F. Ct. Crim. App. 1999)).

The Commonwealth argues that the three amounts of oxycodone recovered from appellant are separate and distinct offenses. The Commonwealth maintains that the drugs were found in different locations, as the Endocet and oxycodone tablets were found in two separate pockets of appellant's pants and the liquid oxycodone was found in the garage. The Commonwealth contends that the drugs can also be differentiated based on their different packaging and storage, as the Endocet and oxycodone tablets were found in separate plastic bags and the liquid oxycodone was found in a vial. The Commonwealth also points to the different forms and appearances of the drugs, as the Endocet tablets were round and white, the oxycodone tablets were round and green, and the oxycodone found in the garage was in liquid form. Finally, the Commonwealth contends that the different pharmaceutical compositions of the drugs support separate convictions, as the Endocet tablets contained both oxycodone and acetaminophen, while the liquid oxycodone and oxycodone tablets were "pure oxycodone."

The Commonwealth relies on the reasoning in this Court's decisions in Shears, 23 Va. App. 394, 477 S.E.2d 309, and Peake, 46 Va. App. 35, 614 S.E.2d 672, to support its argument. However, we find both cases factually distinguishable from the instant case.

In Shears, the defendant was arrested in an informant's home while attempting to deliver drugs to the informant. Shears, 23 Va. App. at 397, 477 S.E.2d at 310. Officers recovered two plastic bags of cocaine from the defendant in the informant's home, one found on the floor near the defendant's foot and one found in the defendant's pocket. Id. Based on the defendant's statements to police after his arrest that he had been selling cocaine for "a couple of weeks," officers obtained a search warrant for the defendant's home, where they discovered "numerous" plastic bags of cocaine and twenty-eight individual bags of marijuana. Id. at 397-98, 477 S.E.2d at 310-11. The defendant argued that the cocaine recovered from his person in the informant's home and the cocaine recovered from his home should have been combined into one offense. Id. at 400, 477 S.E.2d at 311-12. This Court held:

> Here, defendant does not dispute on appeal that he actually possessed cocaine at the informant's trailer for purposes of immediate distribution to a prospective buyer. Manifestly, such conduct constitutes a violation of Code § 18.2-248 separate from the constructive possession of like drugs elsewhere, despite a similar criminal purpose. Hence, defendant committed two distinct violations of a single criminal proscription and was appropriately subject to attendant cumulative punishments.

Id. at 401, 477 S.E.2d at 312.

In Peake, officers executing a search warrant at the defendant's residence encountered the defendant as he was exiting his garage. Peake, 46 Va. App. at 38, 614 S.E.2d at 674. During a frisk of the defendant for weapons, an officer recovered a smoking device and .11 ounce of marijuana from appellant's pocket. Id. While searching the home, officers discovered a lockbox belonging to the defendant that contained 2.17 ounces of marijuana and a set of digital scales. Id. That marijuana was packaged into eleven separate plastic bags, and the defendant later admitted to the officers that he sold marijuana intermittently in order to obtain marijuana for his personal use for free. Id. The defendant was convicted of misdemeanor possession of marijuana

based on the amount found in his pocket, and was convicted in a separate trial of possession of marijuana with the intent to distribute based on the marijuana recovered from his lockbox. Id.

The defendant in Peake argued that his conviction for possession with the intent to distribute marijuana violated the Double Jeopardy Clause. This Court ruled that the evidence supporting the two separate convictions demonstrated that the defendant possessed each stash of drugs *with a separate intent*.

> Considering appellant's implicit admission that he used marijuana in conjunction with his simultaneous possession of a smoking device and a relatively small amount of marijuana, the evidence proved appellant's possession of marijuana in his pocket was for personal use. By contrast, the evidence proved appellant's possession of the larger cache of marijuana in the red lockbox was for distribution. The marijuana was discovered divided into separate bags, with a digital scale, and near a quantity of cash. Significantly, appellant told the police he sold marijuana from the lockbox so he could get his own marijuana for free.

Id. at 41-42, 614 S.E.2d at 676 (footnote omitted) (citation omitted).

In both Shears and Peake, there was evidence that the defendant had demonstrated separate intents with regard to the different stashes of drugs that were recovered. In Peake, one charge was based on the defendant's personal use of marijuana and one charge was based on the defendant's distribution of marijuana, a distinction supported by the defendant's own statements. In Shears, the defendant intended to immediately distribute the cocaine found on his person to a specific buyer, but left the remainder of the cocaine in his residence for future sales. Again, the defendant's own statements supported the conclusion that there were two separate intents; the defendant in Shears told officers that he had been selling cocaine for a couple of weeks, indicating that the stash reserved in his home was intended for a continuing enterprise in the distribution of narcotics.

Conversely, such evidence is manifestly absent in the instant case. Here, the Commonwealth had to prove that the evidence supported appellant's conviction under three

separate indictments involving the same prohibited substance obtained at the same time from appellant and his home. However, the Commonwealth presented no evidence as to any different uses of different forms of oxycodone. There was no evidence that the different forms of oxycodone appealed to different drug users or customers of appellant. The Commonwealth failed to demonstrate that appellant had different intents with regards to the different forms of oxycodone, for instance, that one was for personal use or was intended specifically for a particular buyer.

The Commonwealth relies on the different locations where the oxycodone was recovered, the different packaging of the oxycodone, the different appearances of the oxycodone, and the different pharmaceutical compositions of the oxycodone to support the three separate charges. However, these considerations focus on making distinctions in spatial distance and physical form. This approach is inconsistent with our analysis in Peake, which clearly placed the emphasis on appellant's "demonstrated intent" with respect to each alleged "separate stash." Peake, 46 Va. App. at 41, 614 S.E.2d at 676.

The physical separation of the narcotics at issue, which were found in two pockets of appellant's pants and in a part of appellant's house 15-20 feet from where he was standing, is not indicative of any difference in appellant's demonstrated intent towards the drugs. Nor does the fact that the oxycodone was stored in different packages shed any light on appellant's demonstrated intent; there is no evidence in the instant case that indicates that the separate packages were in any way significant in terms of demonstrating discrete intents to distribute those drugs.[7] The different forms and appearances of the oxycodone also fail to provide support

_____

[7] Our case law focuses on the packaging of narcotics in terms of demonstrating an intent to distribute. See, e.g., Peake, 46 Va. App. at 42, 614 S.E.2d at 676 (considering the fact that the marijuana was divided into separate bags as one of several factors indicating an intent to distribute that marijuana as opposed to possessing it for personal use). However, we cannot find

- 14 -

for the Commonwealth's argument, as there was no evidence presented at the hearing that these different forms and physical appearances had any relevance to demonstrating separate intents.[8]

With no evidence of how these distinctions relate to demonstrating appellant's distinct intent towards each drug, we cannot find, under the facts of this case, that appellant had three separate intents to distribute oxycodone that would support three separate convictions. Without such evidence, we could only speculate as to whether location, packaging or different physical appearances would prove three separate intents in this case. While these factors certainly have a role in demonstrating intent, there is simply no evidence from which a reasonable inference can be drawn that supports separate intents with respect to the amounts of oxycodone recovered in this case.[9]

We find that the Commonwealth has failed to provide evidence that appellant possessed different demonstrated intents sufficient to support three separate charges of possession with the intent to distribute oxycodone. Thus, we hold that the trial court erred in denying appellant's motion to consolidate or dismiss the indictments.

CONCLUSION

We find that the trial court did not err in denying appellant's motion to suppress the narcotics recovered from the execution of the search warrant, as the officer's actions fall under

---

precedent that stands for the proposition that the fact that drugs are stored in separate packages, without more, can be used to support multiple charges for possession with the intent to distribute.

[8] The Commonwealth's contention that the Endocet can be differentiated based on its different pharmaceutical composition is unavailing. Endocet is a combination of oxycodone and acetaminophen, an over-the-counter, legal medication. Possession of Endocet tablets is prohibited only because it contains oxycodone.

[9] We are not suggesting that the same drugs, found under circumstances identical to this case, cannot support separate units of prosecution. We narrowly hold that, without testimony demonstrating how these circumstances relate to proving separate intents to distribute, separate units of prosecution cannot stand in this case.

- 15 -

the good faith exception and the affidavit was sufficient to establish the reliability of the information received from the informant.  We find that the trial court erred in denying appellant's motion to consolidate or dismiss, as appellant's possession of oxycodone was not sufficient to support more than one count of possession with the intent to distribute.  We affirm appellant's conviction for possession with the intent to distribute hydrocodone and one of appellant's convictions for possession with the intent to distribute oxycodone.  We reverse the judgment of the trial court and remand this case to the trial court with instructions to consolidate the three indictments into one indictment for possession with the intent to distribute oxycodone, and to sentence appellant accordingly.

Affirmed in part,
reversed in part,
and remanded.