**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:  2009-NMSC-015

Filing Date:   April 2, 2009

Docket No. 30,916

STATE OF NEW MEXICO,

      Plaintiff-Respondent,

v.

CHARLOTTE QUICK,

      Defendant-Petitioner.


**ORIGINAL PROCEEDING ON CERTIORARI**
**Stephen K. Quinn, District Judge**


Hugh W. Dangler, Chief Public Defender
Joseph P. Walsh, Assistant Appellate Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

**CHÁVEZ, Chief Justice.**

**{1}**    Charlotte Quick (Defendant) was convicted of possession of methamphetamine, contrary to NMSA 1978, Section 30-31-23 (1990, prior to 2005 amendments) and possession of methamphetamine with intent to distribute, contrary to NMSA 1978, Section 30-31-22(A) (1990, prior to 2005 amendments).  She claims her convictions subjected her to multiple

1

punishments in violation of her right to be free from double jeopardy because they were based on "acts which constitute one continuous offense." For this reason, she requests that we vacate her conviction for simple possession. The State argues that there was no double jeopardy violation because the evidence of both use and sale of methamphetamine presented at trial allowed the jury to find independent factual bases for both of Defendant's convictions. The Court of Appeals upheld Defendant's convictions in a divided unpublished opinion. *State v. Quick*, No. 27,013, slip op. at 15 (N.M. Ct. App. Jan. 24, 2008).

**{2}** We conclude that the separate crimes of possession and possession with intent to distribute were intended by the New Mexico Legislature to apply in the alternative when based on a single act of possession. Because the methamphetamine at issue was found in Defendant's control during a single occurrence, Defendant committed only one act of possession. We therefore hold that Defendant was subjected to double jeopardy and remand to the district court to vacate her conviction for possession of methamphetamine.

## I.    BACKGROUND

**{3}** There appears to be no dispute between the parties regarding the relevant facts of this case. After receiving information that led him to believe that Defendant was using drugs, Defendant's probation officer made a visit to her house on April 18, 2005. During the visit, he asked Defendant if she was using drugs and she looked toward her bedroom closet, where he found a kit containing drugs and paraphernalia. The probation officer called a police officer and they searched the room together, finding, among other things, (1) a container with 7.03 grams of methamphetamine, a quantity which the probation officer and police officer suggested was indicative of distribution; (2) a container with 2.71 grams of methamphetamine; (3) a container with 0.61 grams of methamphetamine; (4) a pipe with white residue, which the probation officer testified was probably used to smoke methamphetamine; (5) syringes; (6) a funnel, which the probation officer testified was probably used to put drugs in bags; (7) baggies, which the probation officer testified were probably used to sell drugs; (8) straws; and (9) a scale, which the probation officer testified was probably used to distribute drugs. In addition, the officers at the house noticed a large number of telephone calls and observed "people that probably should not have been there."

**{4}** Defendant appealed her convictions of possession of methamphetamine and possession of methamphetamine with intent to distribute, claiming inter alia that her conviction of both of these crimes violated her right to be free from double jeopardy. *Quick*, No. 27,013, slip op. at 10. The Court of Appeals held in a 2-1 memorandum opinion that Defendant was not subjected to double jeopardy. The majority concluded that Defendant's conduct was not unitary under the analysis first laid out in *Swafford v. State,* 112 N.M. 3, 810 P.2d 1223 (1991). *Quick*, No. 27,013, slip op. at 10-12. The Court concluded that the "evidence [from trial] permitted the jury to reasonably conclude that Defendant possessed some of the methamphetamine with an intent to distribute it, and that she separately and distinctly possessed other methamphetamine for personal use." *Id*. at 13. It arrived at this conclusion because "Defendant and associated accoutrements of drug activity were

2

sufficiently separate in space and apparent purpose to allow conviction for distinct crimes[.]" *Id*. at 15. The dissent would have held that "there was nothing to distinguish which methamphetamine pertained to which charge because all of the methamphetamine was discovered in Defendant's home and because it all formed the basis for both charges." *Id*. at 19 (Castillo, J., dissenting). To the dissenting judge, it was not enough that the drugs could have been used for either possession or sale. *Id*. at 20.

**{5}** We granted Defendant's petition for writ of certiorari on the issue of whether she was "subjected to double jeopardy when she was charged with and convicted of possession of methamphetamine with intent to distribute and possession of methamphetamine when all of the contraband was found in the same place at the same time[.]" *State v. Quick*, 2008-NMCERT-002, 143 N.M. 667, 180 P.3d 674. We reverse the Court of Appeals and remand to the district court to vacate Defendant's conviction for possession of methamphetamine.

## II. DISCUSSION

**{6}** Defendant claims that her convictions subjected her to multiple punishments in violation of her right to be free from double jeopardy, because her single act of possessing methamphetamine was used to convict her of both possession and possession with intent to distribute. We review such claims de novo. *State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 38, 136 N.M. 309, 98 P.3d 699.

**{7}** In the context of multiple punishments within a single proceeding, double jeopardy "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). "[W]here the legislature has explicitly authorized multiple punishment the judicial inquiry is at an end, [and] multiple punishment is authorized and proper[.]" *Swafford*, 112 N.M. at 9, 810 P.2d at 1229. In other words, the Legislature is not restrained by double jeopardy from atomizing a defendant's conduct into multiple punishments if they are imposed in a single proceeding. The courts, however, are restrained from doing so without legislative authorization, and therefore legislative intent must be the touchstone of our inquiry.

**{8}** The problem of multiple punishments arises in either of two situations: when a defendant claims to have been convicted (1) of several different crimes or (2) of multiple counts of the same crime, despite legislative intent to impose fewer punishments under the circumstances. *Id.* at 8, 810 P.2d at 1228. The former situation, which Defendant raises here, is known as a double description case. *Id.* In a double description case such as Defendant's, we must ultimately decide "whether the facts presented at trial establish that the jury *reasonably* could have inferred independent factual bases for the charged offenses." *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (emphasis added) (internal quotation marks and citation omitted). If, given the evidence presented at trial and the statutory definitions of the crimes the jury must have unreasonably parsed the evidence to have found Defendant guilty of the charged offenses, then Defendant was subjected to double jeopardy.

**{9}** Defendant's situation resembles several cases recently decided by the New Mexico Court of Appeals. In *State v. Contreras*, the Court of Appeals considered the case of a defendant convicted of both trafficking and possession of cocaine. 2007-NMCA-045, ¶ 22, 141 N.M. 434, 156 P.3d 725, *cert. quashed*, 2007-NMCERT-011, 143 N.M. 157, 173 P.3d 764. In *Contreras*, the defendant had taken undercover agents who wished to purchase drugs with him to a residence to complete the transaction. *Id.* ¶ 2. He showed one of the agents a bag of cocaine, measured a quantity for the agent, and kept the rest. *Id.* ¶ 3. After his conviction, the defendant claimed a violation of his right to be free from double jeopardy, and the Court of Appeals rejected the argument. *Id.* ¶ 23. The Court reasoned that different conduct was the basis of each charge, since

> (1) Defendant had possession of the cocaine when he got it from his supplier, (2) Defendant then brought the cocaine into the bathroom and put it on the counter so that he could separate a portion to sell to [the agent], and (3) once he completed the sale with [the agent], Defendant kept a portion of the cocaine. The State thus provided the jury with sufficient factual bases for finding that Defendant possessed the cocaine both before and after he sold some of it to [the agent].

*Id.* ¶ 22.

**{10}** Defendant argues that in this case, unlike *Contreras*, the State is unable to distinguish between the categories of methamphetamine for personal use and for distribution. The State responds that in this case, the distinction between the factual bases underlying the convictions is even clearer since there is actual evidence of personal use.

**{11}** Another recently-decided case is *State v. Lopez*, 2008-NMCA-002, 143 N.M. 274, 175 P.3d 942 (filed 2007), *cert. denied*, 2007-NMCERT-012, 143 N.M. 213, 175 P.3d 307. In *Lopez*, the defendant had been convicted, like Defendant, of possession of methamphetamine and possession of methamphetamine with intent to distribute. *Id.* ¶ 1. This conviction resulted from the discovery of methamphetamine when police entered the defendant's house after receiving information leading them to believe that drugs were being sold there. *Id.* ¶ 3. In the defendant's bedroom, the police found a small amount of methamphetamine, a scale, two spoons, baggies, plastic wrap, aluminum foil, and "other trafficking-related drug paraphernalia." *Id.* ¶ 5. A larger amount of methamphetamine was found in the defendant's shorts after she was taken to the hospital complaining of pain. *Id.* The defendant claimed that her right to be free from double jeopardy was violated when she was convicted of both possession and possession with intent to distribute for a single course of conduct. *Id.* ¶ 11. The State argued that the conviction for possession was supported by the methamphetamine seized at the defendant's home, and the conviction for possession with intent to distribute was supported by the methamphetamine found in the defendant's clothing at the hospital. *Id.* ¶ 15. The Court of Appeals agreed with the defendant, holding that her conduct was unitary because all of the drugs came from her home and

4

[t]here was no evidence indicating that the methamphetamine she had at the home, whether it was discovered in the home or on her person at the hospital, and even if the substances discovered were different in quantity or packaging, should be separated into different categories of "mere possession," and "possession with intent to distribute." The evidence strongly supports the conclusion that Defendant possessed all methamphetamine in question at the residence and that its purpose could have been both for personal use and for distribution.

*Id.* ¶ 17.

**{12}** Defendant argues that just as in *Lopez*, the drugs in her case were all seized at the same time and in the same place, and no specific quantities have been identified as being intended for either use or distribution. The State responds that it has presented evidence that *Lopez* lacked: specifically, distinct evidence of use (use paraphernalia and small quantities of the drug) and distribution (scales, baggies, and large quantities of the drug). The State claims that this "heterogeneity of the evidence" distinguishes this case from *Lopez* by allowing the jury to find, via inferences about Defendant's intent, that different quantities of the drug were for different purposes.

**{13}** We begin our analysis by noting that despite this dispute over the import of New Mexico precedent, the parties agree that the offense of simple possession is a lesser included offense of possession with intent to distribute, and is therefore the same offense for double jeopardy purposes if the two charges are based on the same act or transaction. We agree with the parties.

**{14}** In *State v. Armendariz*, we explained that

[a]bsent clear legislative intent [demonstrating that two offenses should be punishable separately], we follow the rule of statutory construction known as the "*Blockburger* test," taken from *Blockburger v. United States*, 284 U.S. 299 (1932). This test focuses strictly upon the elements of the statutes. The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

2006-NMSC-036, ¶ 21, 140 N.M. 182, 141 P.3d 526 (internal quotation marks and citation omitted)).

**{15}** Under the *Blockburger* test, possession, Section 30-31-23, is clearly subsumed by possession with intent to distribute, Section 30-31-22(A). To be convicted of possession, the State must show that Defendant both possessed a controlled substance (methamphetamine) and knew that she possessed a controlled substance. Section 30-31-23;

5

*State v. Wood*, 117 N.M. 682, 684, 875 P.2d 1113, 1115 (Ct. App. 1994); *see generally* UJI 14-3102 NMRA. To be convicted of possession with intent to distribute, the State must not only prove both of the elements of possession, but also prove that Defendant intended to transfer the controlled substance to another person. Section 30-31-22(A); *see generally* UJI 14-3104 NMRA. Therefore, possession is clearly subsumed. *See Lopez*, 2008-NMCA-002, ¶ 20 ("[P]ossession with intent to distribute has one additional element that simple possession does not have: intent to transfer the substance to another. However, proving a violation of possession with intent to distribute necessarily requires the State to prove Defendant possessed the methamphetamine. Therefore, . . . simple possession is subsumed within possession with intent to distribute." (citations omitted)).

**{16}** The *Blockburger* test is nothing more than "a rule of statutory construction[,]" *Hunter*, 459 U.S. at 366, embodying the commonsense understanding that "[i]f proving the violation of one statute always proves a violation of another statute, . . . it would appear that the legislature was creating alternative bases for prosecution but only a single offense." George C. Thomas III, *A Unified Theory of Multiple Punishment*, 47 U. Pitt. L. Rev. 1, 26-28 (1985). To apply this to the offenses in question, the *Blockburger* test leads us to the conclusion that the Legislature intended that when an individual's conduct satisfies all the elements of simple possession, and there is also evidence that the defendant intended to distribute the controlled substance, she may be convicted of the more serious offense of possession with intent to distribute, instead of simple possession.

**{17}** The State's position would require us to hold that the Legislature intended that when a portion of the controlled substance in a defendant's possession is intended for distribution, that portion can be the basis of a possession with intent to distribute conviction, while the remaining portion may support a conviction of simple possession. We reject this contention. The State has conceded that it could not convict a defendant of multiple counts of possession with intent to distribute based on a single quantity of drugs, regardless of whether the defendant intended to distribute the drugs to different people. Neither, presumably, may a defendant be convicted of multiple counts of simple possession based on multiple packages of drugs in his or her possession. Under both statutes, the prohibited act is simply possession of a particular controlled substance. The controlled substances statutes do not define possession, but UJI 14-3130 NMRA states that "[a] person is in possession [of a controlled substance] when he knows it is on his person or in his presence, and he exercises control over it." This accords with our Court's decisions that define possession in the context of a controlled substance as "care, control and management." *See, e.g.*, *State v. Mosier,* 83 N.M. 213, 215, 490 P.2d 471, 473 (Ct. App. 1971) (decided under former law). We think it reasonable to conclude that the entire quantity of a particular controlled substance under one person's control at any one time defines the possession prohibited by Sections 30-31-22 and -23. In other words, "[i]n possession-oriented offenses, the proscribed item *is* the allowable unit of prosecution." *Fenoglio v. State*, 252 S.W.3d 468, 478 (Tex. App. 2008) (emphasis added).

**{18}** Although this case involves two different possession-based offenses, nothing in the

6

language of the statutes at issue suggests to us that the actus reus of these crimes–the control of all of a particular type of controlled substance by the defendant at a given time–should be construed differently. The State argues that the element of intent to distribute in the greater offense should lead to the inference that if different intents can be discerned for different portions of the controlled substance, a jury should be able to use each portion as the basis for a different conviction. We might be convinced if simple possession included the element of intent to use. However, Section 30-31-23 does not require a defendant to intend to do anything with the drugs in his or her possession. Therefore, in the context of the foregoing discussion of the meaning of possession, we believe the Legislature intended that when a defendant can be demonstrated to have intended to sell any portion of the particular controlled substance in his or her possession, the controlled substance should not be parsed into "two separate possessions." Instead, the defendant may be convicted of possession with intent to distribute or simple possession–but not both–for the entire quantity of the controlled substance.

**{19}** Having determined that the two offenses are meant to be alternatives to one another when the evidence can support the finding of only one act of possession, our task is to decide if there were, in fact, multiple acts in this case. In other words, we must decide whether Defendant's conduct was unitary. "We determine whether the conduct was unitary through the elements of the charged offenses and the facts presented at trial." *Lopez*, 2008-NMCA-002, ¶ 16 (internal quotation marks and citation omitted); *see also* Thomas, *supra* at 20 ("[T]he unitary conduct issue depends entirely on what the legislature intended to be the unit of conviction, rather than on a space-time analysis of the defendant's physical actions." (footnote omitted)).

**{20}** We hold that Defendant's conduct could not have provided a basis for both convictions. As noted above, the actus reus of both offenses is the control of all of a particular type of controlled substance by the defendant at a given time. If the evidence supports only one such actus reus, we must find Defendant's conduct to be unitary. The evidence in this case shows that all of the methamphetamine in question was seized from Defendant's room at the same time. This constitutes only one act of possession.

**{21}** Since Defendant's possession of methamphetamine cannot reasonably be parsed into multiple possessions, double jeopardy prevents her from being convicted of both possession and possession with intent to distribute. This holding reconciles the opinions of the Court of Appeals in *Contreras* and *Lopez*. In *Contreras*, where one of the defendant's convictions was for trafficking and the other was for possession, the two statutes at issue clearly defined different prohibited acts which were supported by independent evidence, namely, the act of trafficking cocaine and the act of possessing a different quantity of cocaine that remained after the trafficking was complete. This was not the case in *Lopez*, which, like the case at bar, involved two possession-based convictions based on different packages of drugs possessed by the defendant at the same place and time.

## III.    CONCLUSION

**{22}** Defendant's right to be free from double jeopardy has been violated. We remand to the district court to vacate her conviction for simple possession.

**{23}** **IT IS SO ORDERED.**

                                         **EDWARD L. CHÁVEZ, Chief Justice**

**WE CONCUR:**

**PATRICIO M. SERNA, Justice**

**RICHARD C. BOSSON, Justice**

**CHARLES W. DANIELS, Justice**

**MAES, Justice (specially concurring).**

**{24}** I agree with the majority that the Legislature intended the crimes of possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23 (1990, prior to 2005 amendment), and possession of a controlled substance with intent to distribute, contrary to NMSA 1978, Section 30-31-22 (1990, prior to 2005 amendment), to apply in the alternative when based on a single act of possession. I also agree with the majority that, under the circumstances of the present case, Charlotte Quick (Defendant) committed only a single act of possession and, therefore, her convictions of both possession and possession with intent to distribute violate the double jeopardy clause. I write separately, however, to clarify that a defendant properly may be convicted of both simple possession and possession with intent to distribute when the charges are based on separate acts of possession.

**{25}** In *Swafford v. State*, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991), this Court observed that "the double jeopardy clause clearly cannot operate to prohibit prosecution, conviction, and punishment in a single trial for discrete acts violative of the same statute." Although it is a "fairly simple task" to identify discrete acts when those acts are "sufficiently separated by either time or space," difficulty arises when two or more acts are committed in the same limited time period within the same geographic area. *Id.* at 13-14, 810 P.2d at 1233-34. Accordingly, "we look to whether a defendant's acts are separated by 'sufficient indicia of distinctness' to be considered non-unitary conduct." *State v. Saiz*, 2008-NMSC-048, ¶ 30, 144 N.M. 663, 191 P.3d 521 (citation omitted). "Distinctness may be established by determining whether the acts constituting the two offenses are sufficiently separated by time or space, looking to the quality and nature of the acts, the objects and results involved, and the defendant's *mens rea* and goals during each act." *Id.*; *see also State*

*v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 ("To determine whether a defendant's conduct was unitary, we consider such factors as whether acts were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and the defendant's goals for and mental state during each act.").

**{26}**   "In drug cases, the question frequently arises whether a defendant's entire cache of drugs is to be considered as a single unit or as separate units for purposes of defining the extent of his criminal activity." *United States v. Johnson*, 977 F.2d 1360, 1374 (10th Cir. 1992).

> Generally, courts which have considered the issue [of multiple prosecutions under controlled substance statutes] have determined that separate convictions for possession of the same controlled substance [with an intent to distribute] will not violate the Double Jeopardy Clause if the possessions are sufficiently differentiated by time, location, or intended purpose.

*Commonwealth v. Rabb*, 725 N.E.2d 1036, 1043 (Mass. 2000) (alterations in original) (internal quotation marks and citation omitted); *see also Johnson*, 977 F.2d at 1374; *United States v. Maldonado*, 849 F.2d 522, 524 (11th Cir. 1988); *United States v. Blakeney*, 753 F.2d 152, 155 (D.C. Cir. 1985); *State v. Crawley*, 889 A.2d 930, 936-38 (Conn. App. 2006); *Lane v. Commissioner*, 659 S.E.2d 553, 558-59 (Va. App. 2008); *In re Davis*, 12 P.3d 603, 609-10 (Wash. 2000) (en banc). These factors are "meant to be disjunctive, with no one determinative factor." *Rabb*, 725 N.E.2d at 1043. Accordingly, although a supply of narcotics generally is not divisible for purposes of prosecution, various stashes of a controlled substance may be considered separate if the evidence indicates that they were: (1) separated in space or time; or (2) intended for different purposes or transactions.

**{27}**   "[A] determination of the existence of separate stashes is not constrained by any particular measure of spatial or temporal distance," *Johnson*, 977 F.2d at 1374, but close proximity in space and time is indicative of unitary conduct. *See Rabb*, 725 N.E.2d at 1043 n.6 (noting that separate charges based on "multiple amounts of a controlled substance, virtually identical in quality, hidden separately at one location" are "problematic" under the double jeopardy clause). Likewise, lack of evidence indicating that the defendant had a separate intent or purpose with respect to each individual stash is not necessarily fatal to the determination that separate stashes existed, but, in the absence of other factors, is strongly corroborative of unitary conduct. *See State v. Lopez*, 2008-NMCA-002, ¶ 17, 143 N.M. 274, 175 P.3d 942 (2007), *cert. denied*, 2007-NMCERT-012, 143 N.M. 213, 175 P.3d 307 (holding that the defendant did not separately possess two stashes of methamphetamine because "it [was] obvious that the methamphetamine Defendant possessed at the hospital came from her home" and there was no evidence to indicate that she had a separate intent with respect to each stash); *Johnson*, 977 F.2d at 1374 (holding that the defendant separately possessed two stashes of amphetamine because he "admitted to possession of the brown vial amphetamine for personal use" and the jury reasonably could have inferred that "the larger quantities of amphetamine contained in the thermos bottles" were for distribution); *Lane*,

9

659 S.E.2d at 561 (holding that the defendant did not separately possess three stashes of oxycodone because there was no evidence to indicate that he had a separate intent with respect to each stash).

{28} The "separate stash" test incorporates the "sufficient indicia of distinctness" factors—time, space, intent, purpose, and the quality and nature of the defendant's conduct—to determine whether an individual has committed multiple acts of possession of a controlled substance. Accordingly, I would adopt this test to determine whether a defendant's conduct was unitary under Sections 30-31-22 and -23.

{29} With these principles in mind, I turn to the facts of the present case. First, the evidence demonstrates that Defendant possessed three separate stashes of methamphetamine: (1) a container with 7.03 grams; (2) a container with 2.71 grams; and (3) a container with .61 grams. Although the methamphetamine was packaged separately, it was all found at the same time and in the same location, namely, in Defendant's bedroom. Second, although there was evidence of both personal use and intent to distribute methamphetamine, there was no evidence to indicate that the defendant had a separate intent or purpose with respect to each of the individual stashes found. Stated another way, there was no evidence to indicate which of the three stashes were intended for distribution and which were intended for personal consumption.

{30} Because all of the methamphetamine possessed by Defendant was found in the same place at the same time and there was no evidence to indicate that Defendant had a separate intent or purpose with respect to each of the individual stashes found, Defendant's conduct was unitary in nature. Defendant's conviction for both possession of methamphetamine and possession of methamphetamine with intent to distribute therefore violates the double jeopardy clause. Accordingly, I concur in the judgment of the majority opinion.

_____
**PETRA JIMENEZ MAES, Justice**

**Topic Index for *State v. Quick*, No. 30,916**

**CT**          **CONSTITUTIONAL LAW**

CT-DJ       Double Jeopardy

**CL**          **CRIMINAL LAW**

CL-CL       Controlled Substances

CL-DR       Distributing

CL-PS       Possession

**CA**           **CRIMINAL PROCEDURE**

CA-DJ       Double Jeopardy

CA-LO       Lesser Included Offense