This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41546**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**ERIK CLARK REYES SIEGEL a/k/a
ERIK C. SIEGEL,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY
Daniel A. Bryant, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Emily Miller, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**WRAY, Judge.**

**{1}** A jury convicted Defendant of one count each of possession and distribution of child sexual exploitation materials, contrary to NMSA 1978, Section 30-6A-3(A), (C) (2016). Defendant appeals and argues that (1) the images at issue did not establish that he possessed or distributed "obscene visual . . . medium depicting any prohibited sexual act" as required by Section 30-6A-(3)(A) and (C); and (2) the convictions arise from the

same images and conduct and therefore violated double jeopardy protections. We reject these arguments and affirm.

**DISCUSSION**

**{2}** Because this a memorandum opinion, prepared for the benefit of the parties, we reserve any factual recitation for the analyses of Defendant's arguments. We address each argument in turn, beginning with the evidence supporting the convictions.

**I.      The Convictions**

**{3}** Defendant first argues that the "charges never should have been submitted to a jury because the images, on their face, fail to meet the purely legal threshold for prosecution." Although this question was raised in a pretrial motion to dismiss and again at the directed verdict stage, "when a case proceeds to trial, error resulting from an improperly denied pretrial motion is not reversible for the result becomes merged in the subsequent trial" and appellate courts "review [the] judgment of conviction, rather than the denial of [the pretrial] motion to dismiss." *See State v. Myers*, 2009-NMSC-016, ¶ 14, 146 N.M. 128, 207 P.3d 1105 (internal quotation marks and citation omitted). To the extent the issues involve statutory construction, our review is de novo. *Id.* ¶ 13. Otherwise we review for sufficiency of the evidence by (1) viewing "the evidence resolving all conflicts and indulging all permissible inferences with deference to the findings of the trial court"; and (2) determining "whether the evidence, viewed in this manner, could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Id.* (alteration, internal quotation marks, and citation omitted); *see State v. Rendleman*, 2003-NMCA-150, ¶ 66, 134 N.M. 744, 82 P.3d 554 ("[A]n independent review of the record for substantial evidence [is] appropriate in obscenity cases on appeal after trial."), *overruled on other grounds by Myers*, 2009-NMSC-016, ¶ 32.

**{4}** The intentional possession or distribution of "any obscene visual or print medium" is unlawful if the "person knows or has reason to know that the obscene medium depicts any prohibited sexual act or simulation of such act and if that person knows or has reason to know that one or more of the participants in that act is a child under eighteen years of age." Section 30-6A-3(A), (C). No party disputes that the subject of the photographs (Subject) was seventeen at the relevant time. The terms "prohibited sexual act" and "obscene" are defined, in relevant part, as follows:

> A.      "prohibited sexual act" means . . . lewd and sexually explicit exhibition with a focus on the genitals or pubic area of any person for the purpose of sexual stimulation;
>
> . . . .
>
> E.      "obscene" means any material, when the content if taken as a whole:

> (1) appeals to a prurient interest in sex, as determined by the average person applying contemporary community standards;
>
> (2) portrays a prohibited sexual act in a patently offensive way; and
>
> (3) lacks serious literary, artistic, political or scientific value.

Section 30-6A-2(A)(5), (E). The definition of "obscene" arises from cases that define the constitutional scope of permissible regulation of speech. *Myers*, 2009-NMSC-016, ¶¶ 11, 26. Defendant argues that the images did not depict a prohibited sexual act and were not obscene. We first consider whether the evidence supported the jury's finding that the images depicted a prohibited sexual act.

**{5}** Our Supreme Court has explained that "[a] prohibited sexual act is composed of three essential elements: (1) a 'lewd and sexually explicit exhibition'; (2) 'with a focus on the genitals or pubic area of any person'; (3) 'for the purpose of sexual stimulation.'" *Id.* ¶ 19 (quoting Section 30-6A-2(A)(5)). We refer to these three prohibited sexual act (PSA) elements as "the PSA elements." The first PSA element involves an objective consideration, the second depends on the image's content, and the third is evaluated subjectively. *See State v. Myers*, 2011-NMSC-028, ¶ 34, 150 N.M. 1, 256 P.3d 13 (addressing the first and third PSA element). The first PSA element "requires an exhibition that is *both* sexually explicit and lewd," *Myers*, 2009-NMSC-016, ¶ 19 (emphasis added), and we turn to that analysis.

**{6}** The State presented five photographs to the jury. On review, the evidence supported a jury finding that at least two[1] photographs depicted a sexually explicit exhibition. The photograph at page 1128 (Image 1128) of State's exhibit three depicts Subject, posed and standing faced toward a mirror, naked from just above the knees to the shoulders. Space can be seen between Subject's legs. The image at page 1558 (Image 1558) also depicts Subject, nude, standing next to a counter, angled slightly toward a mirror. Subject's legs are together, but the pubic area can be seen in the mirror in the image. As such, the evidence supported a finding that these photographs depicted a sexually explicit exhibition. *See Myers*, 2009-NMSC-016, ¶ 19 (describing "a sexually explicit exhibition" as "a clear, graphic and unequivocal display or portrayal of nudity or sexual activity").

**{7}** The evidence additionally supported a jury finding that these photographs were lewd. This Court evaluates the evidence of lewdness according to the six nonexclusive "*Dost* factors." *Id.* ¶ 20 (citing *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal.

---

[1] We do not address whether the other three photographs provided sufficient evidence to support a conviction under Section 30-6A-3(A) or (E). *See State v. Olguin*, 1995-NMSC-077, ¶ 2, 120 N.M. 740, 906 P.2d 731 ("[A] conviction under a general verdict must be reversed if one of the alternative bases of conviction is legally inadequate, but . . . due process does not require a guilty verdict to be set aside if an alternative basis of conviction is only factually inadequate to support a conviction." (internal quotation marks and citations omitted)); *Myers*, 2009-NMSC-016, ¶ 14 (directing review for sufficiency of the evidence).

1986)). The *Dost* "factors include consideration of whether: (1) the focus is on the genital or pubic area; (2) the setting is sexually suggestive; (3) the child is depicted in an unnatural pose, or in inappropriate attire, considering the child's age; (4) the child is fully or partially clothed; (5) the depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) the depiction is designed to elicit a sexual response in the viewer." *Rendleman*, 2003-NMCA-150, ¶ 43. These factors provide "specific, workable criteria" though "there may be other factors that are equally if not more important in determining whether a photograph contains a lewd exhibition." *Myers*, 2009-NMSC-016, ¶ 20 (alteration, internal quotation marks, and citation omitted). The lewdness inquiry is "always . . . case-specific." *Id.* (internal quotation marks and citation omitted).

**{8}** Because the first *Dost* factor and the second PSA element are identical, we consider them together. *See Myers*, 2009-NMSC-016, ¶ 21. This inquiry, whether the focal point of the photographs is genitalia or the pubic area, *id.* ¶¶ 19-20, "can be determined by photographic elements, such as design, composition, lighting, positioning, attire, and setting." *Id.* ¶ 21. On appeal, Defendant disputes that the "focus" in any of the photographs is on the pubic area and cites this Court's analysis of two of the photographs in *Rendleman*, which showed naked breasts or buttocks covered in mud. *See* 2003-NMCA-150, ¶ 79. Those photos did not "meet the focus element" because genitalia or the pubic area were "barely visible, if at all." *Id.* (internal quotation marks omitted). Images 1128 and 1558, however, depict the pubic area. Whether any shadow diminished the photo's "focus" on the pubic area, as Defendant argues, was only one factor to consider—lighting. *See id.* ¶ 45. Otherwise, the composition and design of the photographs as well as Subject's positioning, draw attention to the pubic area. In Image 1128, Subject is standing fully nude with legs apart, emphasizing the area. In Image 1558, although Subject is slightly turned and fully nude, the pubic area is clearly visible and all other private areas (such as breasts or buttocks) are blocked or out of view. Subject's position facing toward the mirror, the nudity, and the private setting would permit a reasonable jury to determine that the pubic area is the "focal point of the images." See *Myers*, 2009-NMSC-016, ¶ 23.

**{9}** The remaining *Dost* factors also support a conclusion that the images were lewd. *See id.* ¶¶ 20-21. The settings for Images 1128 and 1558—the poses—are sexually suggestive and intimate; Subject is in unnatural (or posed) positions and is fully nude; and we agree with the district court's view of the photographs that Subject was posed "in ways that suggest sexual coyness, or a willingness to engage in sexual activity." *See id.* ¶ 20 (outlining *Dost* factors two through five). As for the sixth *Dost* factor, the jury must determine that the images "objectively appear created for the purpose of sexually stimulating." *Myers*, 2011-NMSC-028, ¶ 31. Based on our review of the images, as described thus far, the jury could have reasonably determined that Images 1128 and 1558 objectively depicted Subject from a sexualized point of view, satisfying the sixth *Dost* factor. *See Myers*, 2009-NMSC-016, ¶ 21.

**{10}** Having determined that the evidence supported the first two PSA elements, we turn to the third, which resembles the sixth *Dost* factor but serves a different purpose.

*See id.* Our Supreme Court has explained in the context of manufacturing that the evidence must show that the defendant had "the subjective intent" to possess and/or distribute "the images for the purpose of sexual stimulation (either [their] own stimulation or someone else's)." *Myers*, 2011-NMSC-028, ¶ 31; *see also Myers*, 2009-NMSC-016, ¶ 21 (explaining that the third PSA element "requires the trier of fact to examine whether the defendant possessed, [or] distributed . . . the challenged image for the purpose of [their] own sexual stimulation"). The trier of fact "is not limited to the four corners of the photographs" and may "consider extrinsic evidence of the defendant's intent." *Myers*, 2009-NMSC-016, ¶ 32. Subject testified that when Image 1558 was sent to Defendant, he responded that he was sexually stimulated, and when Defendant sent Image 1128 to another person, a sexual conversation ensued. This evidence and the nature of the images, which we have already described, support an inference that Defendant possessed and distributed the images for the purposes of sexual stimulation—either his own or that of another. *See State v. Knight*, 2019-NMCA-060, ¶ 15, 450 P.3d 462 ("Intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." (internal quotation marks and citation omitted)).

**{11}**    Under these circumstances, a reasonable person could conclude that the PSA elements were met, but the statute also requires that the images be "obscene." *See* § 30-6A-2(E). Defendant argues that none of the photographs satisfy the obscenity standard or the PSA elements because Subject took the photos, the creation of the images was not traumatic, Subject and Defendant were in a lawful and consensual relationship, and Subject was only two months away from turning eighteen. Relying on these factual assertions, Defendant also maintains that none of the images were obscene as defined by Section 30-6A-2(E) because the definition "excludes a normal interest in sex" expressed by "an almost-18-year-old." *See* § 30-6A-2(E)(1), (2) (requiring that, in relevant part, the content (1) "appeals to a prurient interest in sex" according to "contemporary community standards" and (2) "portrays a prohibited sexual act in a patently offensive way").

**{12}**    We observe that Defendant does not argue that he should not have been convicted under the statute because Subject was so close to eighteen. Instead, Defendant maintains that Subject's age should have been a factor to evaluate the PSA elements and the obscenity determination. The jury was free to consider Subject's age in evaluating whether the image satisfied the statutory requirements. Defendant encouraged the jury to consider Subject's age in the calculus during closing argument. The jury, however, convicted Defendant, and we decline to reweigh the evidence. *See State v. Estrada*, 2001-NMCA-034, ¶ 41, 130 N.M. 358, 24 P.3d 793.

**{13}**    Defendant's arguments in relation to obscenity disregard the purpose underlying the Legislature's prohibition of child exploitation. *See Myers*, 2009-NMSC-016, ¶ 17 ("The purpose of the [Sexual Exploitation of Children] Act is to protect children from the harm to the child that flows from trespasses against the child's dignity when treated as a sexual object." (internal quotation marks and citation omitted)). These materials are "particularly harmful because the child's actions are reduced to a recording which could haunt the child in future years, especially in light of the mass distribution system for

child pornography." *Id.* (internal quotation marks and citation omitted). The Legislature treats many different sexual activities differently depending on the age of the participants. *See, e.g.*, NMSA 1978, § 30-9-1 (1963) (enticement of a child); NMSA 1978, § 30-9-11 (2009) (criminal sexual penetration); NMSA 1978, § 30-9-13 (2003) (criminal sexual contact of a minor); NMSA 1978, § 30-9-14.3 (1996) (aggravated indecent exposure). In the relevant context, the Legislature has provided for additional protections for persons under the age of eighteen from depiction in long-lasting visual media of certain sexual activities. *See* § 30-6A-3. Thus, regardless of Subject's participation or consent, the Legislature has criminalized the possession and distribution of media that meets the statutory criteria.

**{14}** Defendant further argues that the jury was improperly influenced by the district court's statement that the images were sensitive, the case agent's testimony that telling Subject's parents about the situation resulted in a "tough morning," and the State's characterization of the analysis of the images in arguments. Defendant disclaims any "independent claim[]" arising from these challenges that would support reversal and does not argue that the district court was alerted to any improper conduct or that any of the evidence was not admissible. Instead, we understand Defendant to argue that these influences encouraged the jury to view the evidence askance, despite legally correct jury instructions, properly admitted evidence, and no prosecutorial or judicial misconduct. Under these circumstances, we cannot say that Defendant's asserted challenges demonstrate error. *See State v. Gonzales*, 1986-NMCA-050, ¶ 28, 105 N.M. 238, 731 P.2d 381 (noting that "[t]he burden is always on the appellant . . . to clearly point to any alleged error"), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. Because we determine that a reasonable jury could have found that the evidence supported a conclusion that Images 1128 and 1558 satisfied the statutory criteria, we affirm.

## II.    Double Jeopardy

**{15}** Defendant contends that the convictions for possession and distribution violate double jeopardy protections, which prohibit punishment for "several different crimes" unless "the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *See State v. Quick*, 2009-NMSC-015, ¶ 8, 146 N.M. 80, 206 P.3d 985 (emphasis omitted). In this analysis, "we first determine whether the conduct underlying the two offenses is unitary, i.e., whether the same conduct violates both statutes" and if so, "whether the Legislature intended for the unitary conduct to be punished as separate offenses." *State v. Lorenzo*, 2024-NMSC-003, ¶ 5, 545 P.3d 1156 (alteration, internal quotation marks, and citation omitted). Defendant argues that "[b]ecause the jury necessarily relied on the same images and conduct for both counts, this Court must vacate the possession conviction." We disagree, because as we explain, statutorily prohibited conduct occurred on two separate dates and the convictions were therefore not unitary conduct. *See id.* ¶ 5 ("If the conduct is not unitary, the analysis is complete because the acts are discrete and no violation of the defendant's right against double jeopardy is possible.").

**{16}**   To determine whether the conduct was "unitary"—we consider "the elements of the charged offenses and the facts presented at trial." *See Quick*, 2009-NMSC-015, ¶ 19 (internal quotation marks and citation omitted). The act of possession requires the State to prove that "on the occasion in question, [Defendant] knows what it is, he knows it is on his person or in his presence and he exercises control over it." *See* UJI 14-130 NMRA; *see also* UJI 14-631 NMRA (including additional elements relating to the sexual exploitation of children); UJI 14-631 use note 2 (directing the use of UJI 14-130). To establish distribution, the State had to show many of the same elements set forth in uniform jury instruction for possession, *see* UJI 14-631, as well as that Defendant "distributed" the image. *See* UJI 14-632(1) NMRA.

**{17}**   As Defendant points out, in presenting closing argument to the jury about these instructions and the evidence, the State did not distinguish the conduct that supported the possession and distribution charges and relied on all five images to support each charge. The State told the jury, "It's fair to say that you have to have possession of it before you do something with it. So if you believe Count 1 [manufacturing] and Count 2 [distribution] have been met, then by definition, Count 3 [possession]—he possessed it before he distributed it." Based on these arguments, the State encouraged the jury to determine that if Defendant distributed the images, he necessarily possessed them as well, without identifying any separate conduct that would independently support possession. *See Lorenzo*, 2024-NMSC-003, ¶ 11 (warning that "the [s]tate may not [on appeal] argue in the abstract about what it could have asked the jury to decide").

**{18}**   The evidence also suggested that the crimes of possession and distribution were not factually distinct, at least as to any given image. As we have explained, possession requires a showing that Defendant had knowledge of and control over the images. *See* UJI 14-130. The only evidence of knowledge and control came from the testimony about when those photos were shared. The only other evidence was Subject's testimony that she sent the images to Defendant, which, contrary to the State's contention, does not alone establish possession. *See* § 30-6A-3(A) (defining, in relevant part, unlawful possession of obscene medium depicting prohibited sexual acts); § 30-6A-2(A)(5) (defining "prohibited sexual acts" in relevant part to require "a lewd and sexually explicit exhibition with a focus on the genitals or pubic area of any person for the purpose of sexual stimulation"); *see also Myers*, 2009-NMSC-016, ¶ 21 (requiring that a defendant "possessed, distributed, or manufactured the challenged image for the purpose of [their] own sexual stimulation"). Nor was evidence presented from which Defendant's continued knowing possession, after the distribution, could be inferred. *Cf. State v. Gwynne*, 2018-NMCA-033, ¶¶ 15-16, 417 P.3d 1157 (permitting counts for manufacturing and possession because the evidence of possession was distinct in time from the manufacturing and an intervening event—duplication—occurred). Thus, based on the State's legal theory and the evidence presented at trial, the possession and distribution conduct as it relates to each image appears to be unitary.

**{19}**   Both parties on appeal, however, appear to overlook the fact that Defendant was charged with the possession and distribution of multiple images that were possessed and distributed on different days. In denying Defendant's motion for merger of the

possession and distribution conviction, the district court recognized this stating, "While one has to possess before one can distribute, there is not one set of actions for both charges. . . . The events occurred over a number of days and the jury could have convicted for one of the other photos (besides the one distributed) or all of the photos." The evidence showed that Image 1558 was received, possessed, and distributed during a period of hours spanning September 3, 2019 to September 4, 2019. Subject could not recall when Image 1128 was taken, but the only evidence about when that image was received indicated that Defendant received Image 1128 on September 20, 2019 and shared it the same day. As a result, even though the possession and distribution cannot be distinguished from each other as to any given image, Defendant possessed and distributed two distinct photographs (Images 1558 and 1128) at two distinct times. That is, the incidents of combined acts of possession and distribution as to Image 1558 and Image 1128 are separated by many days such that "the jury reasonably could have inferred independent factual bases for the charged offenses." *See State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104, and therefore support nonunitary conduct and separate counts. *See Lorenzo*, 2024-NMSC-003, ¶ 5 ("If the conduct is not unitary, the analysis is complete because the acts are discrete and no violation of the defendant's right against double jeopardy is possible.").

**CONCLUSION**

**{20}**   We affirm.

**{21}   IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**GERALD E. BACA, Judge**