| STATE V. MARTINEZ-MELGAR |
| --- |

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**ROMEO MARTINEZ-MELGAR,**
**Defendant-Appellant.**

Docket No. A-1-CA-34972
COURT OF APPEALS OF NEW MEXICO
May 6, 2019

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY, Mary L. Marlowe, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Santa Fe, NM, M. Victoria Wilson, Assistant Attorney General, Albuquerque, NM for Appellee

Bennett J. Baur, Chief Public Defender, Kimberly M. Chavez Cook, Assistant Appellate Defender, Santa Fe, NM for Appellant.

**JUDGES**

JACQUELINE R. MEDINA, Judge. WE CONCUR:  LINDA M. VANZI, Judge, JULIE J. VARGAS, Judge

**AUTHOR:** JACQUELINE R. MEDINA

**MEMORANDUM OPINION**

**MEDINA, Judge.**

**{1}** Defendant was charged with trafficking in cocaine, by possession with intent to distribute, pursuant to NMSA 1978, § 30-31-20(A)(3) (2006), and possession of drug paraphernalia, pursuant to NMSA 1978, § 30-31-25.1 (2001). Defendant appeals his convictions on double jeopardy grounds. The State concedes and we agree that Defendant's conviction for possession of drug paraphernalia violates double jeopardy.

We reverse that conviction. Defendant also raises several claims of ineffective assistance of counsel. Defendant has failed to demonstrate a prima facie showing of ineffective assistance of counsel. Therefore, we affirm Defendant's conviction for possession of cocaine with intent to distribute.

## BACKGROUND

**{2}** We begin with the State's case and then turn to Defendant's testimony. Three officers testified on behalf of the State and their testimony is as follows. Santa Fe Police Officer Joseph Nieto, received information from a confidential informant that a Spanish-speaking person by the name of Romeo Martinez-Melgar, was selling drugs from his home located at a specific address in Santa Fe, New Mexico. The confidential informant told Officer Nieto to look for the drugs in a room with a wood burning stove. Officer Nieto verified through a motor vehicle records check that Defendant lived at the address provided by the confidential informant. A background check further revealed Defendant was not a United States citizen.

**{3}** Officer Nieto shared the information he gathered with his supervisor, Sergeant Matt Martinez. Sergeant. Martinez suggested they conduct a "knock-and-talk." Prior to conducting the knock-and-talk, Sergeant Martinez contacted Agent Matthew Salcido with the Federal Immigration and Customs Enforcement Service (ICE) and notified him that they were investigating a non-U.S. citizen, for drug trafficking.

**{4}** About a week after speaking with the confidential informant, Officer Nieto, Sergeant Martinez, Agent Salcido, and Officer Jimenez, drove and parked down the street from Defendant's residence. Sergeant Martinez and Agent Salcido, who was a fluent Spanish-speaker, knocked on Defendant's front door while the other officers were positioned to their right. Agent Salcido and Sergeant Martinez wore plain clothes and were not displaying their weapons. The other officers were wearing their uniforms.

**{5}** Defendant answered the door. Agent Salcido identified himself in Spanish and showed Defendant his badge and credentials. He asked Defendant in Spanish for permission to enter and search the house for narcotics and firearms. According to the officers, Defendant invited them inside and gave them verbal permission to search his home for narcotics. Agent Salcido and Officer Nieto testified that Defendant was calm, not nervous, and did not appear under duress.

**{6}** After entering the house, Officers Nieto and Jimenez stayed with Defendant in the entryway while Agent Salcido and Sergeant Martinez conducted a protective sweep of the house. During the protective sweep, the officers located Defendant's stepdaughter and wife whom they asked to join Defendant.

**{7}** Agent Salcido and Sergeant Martinez saw a detached apartment located in the backyard. For officer safety reasons, they knocked on the apartment door to discover who else might be on the property. The occupant of the apartment, Wilbur, consented to a search of his apartment. Wilbur was not a United States citizen, but an immigration

"records check" revealed he had no outstanding warrants. Agent Salcido and Sergeant Martinez did not detain or question Wilbur because the confidential informant specifically identified Defendant as the person who was selling drugs from inside his home.

**{8}** After completing a quick protective sweep of the backyard apartment, Agent Salcido and Sergeant Martinez returned to Defendant's residence. Agent Salcido, Sergeant Martinez, and Officer Nieto entered a room that looked like a single car garage that had been converted into a living room. Officer Jimenez remained with Defendant. The room had a wood-burning stove, a desk with a computer and a stack of tires. The officers concentrated their search in that room because the confidential informant told Officer Nieto the narcotics would be located in the general area of the wood burning stove.

**{9}** Agent Salcido located a small tool box sitting on a ledge across from the wood burning stove. Agent Salcido opened the tool box and discovered a white plastic jar containing: (1) three medium-sized clear plastic bindles of a white powdery substance that appeared to be cocaine, (2) a mixing cup, (3) a bowl, (4) numerous empty plastic baggies and a digital scale.

**{10}** Officer Jimenez brought Defendant into the room asked Defendant if everything in the room was his. Defendant said, "Yes." Agent Salcido asked Defendant if the contents of the tool box were his and he stated, "Yes." Agent Salcido asked Defendant in Spanish if the computer was his and if the stack of tires were his. Each time Defendant answered, "Yes."

**{11}** Officer Nieto placed Defendant under arrest for possession of cocaine. Officer Jimenez, who was fluent in Spanish, advised Defendant of his rights of which Defendant stated he understood. Officer Nieto conducted a search of Defendant incident to his arrest and while doing so, pulled a wallet out of Defendant's pocket. When he opened the wallet to check for Defendant's identification, fourteen small clear plastic bindles of a white powdery substance fell out of Defendant's wallet. The plastic bindles looked like the corners of plastic baggies. According to Officer Nieto, Agent Salcido asked Defendant about the bindles and Defendant responded: "They were for his personal use."

**{12}** Agent Salcido continued to search the room with the wood burning stove and the tool box. Agent Salcido found a bottle of Inositol Powder inside one of the tires. Agent Salcido and Sergeant Martinez both testified that based on their experience and training, Inositol Powder is a common cutting substance traffickers use to increase the volume of their product.

**{13}** Sergeant Martinez testified that it looked like the cup and bowl found inside the tool box had residue and based on his training and experience, it looked like the cup was used for measuring. He explained that a trafficker would mix cocaine and the Inositol Powder in the bowl and use the cup to weigh the mixture on the scale and then

place the mixture into the corners of plastic baggies. He testified that traffickers would then cut or tie the corners of the baggies containing the mixture and that the trafficker would sell the narcotic. He testified that based on his training and experience, a personal use amount of cocaine would be between a quarter gram to two grams, and that the items found in the tool box indicated to him that there was a narcotics trafficker.

**{14}** The officers also found a trash can in the room that contained the tops of several zip lock bags. Agent Salcido found this indicative of drug trafficking, explaining that traffickers pour small amounts of cocaine into the corners of zip lock bags and discard the top portion of the baggie.

**{15}** Finally, the officers found a ledger on top of the computer. Sergeant Martinez looked at the ledger and testified that based on his training and experience it looked like narcotics ledgers they have found while investigating mid to high level narcotics dealers. Sergeant Martinez explained that those types of ledgers document who owes the trafficker money and how much product they have given to an individual.

**{16}** The evidence of drug trafficking found in Defendant's residence and on his person was sent to the Department of Public Safety Forensic Lab in Santa Fe, New Mexico, for analysis. The State presented testimony from forensic scientist Adam Wolff, who worked at the Department of Public Safety. Wolff testified as an expert in analyzing controlled substances. Wolf analyzed the evidence in this case for the presence of controlled substances and prepared a report containing the results of his analysis.

**{17}** Wolff randomly selected items to test. The results of his analysis were as follows: (1) the white powder in the bowl was cocaine; (2) the powder in the large bag found in the tool box was not cocaine; (3) a bindle weighing 49.2611 grams identified as Exhibit 4B-1, could not be identified as cocaine; and (4) two smaller bindles contained cocaine.

**{18}** After the close of the State's case, Defendant testified on his own behalf. Defendant testified that when he answered the door all the officers entered his home, told him they were from ICE, and were looking for someone named Wilbur. Defendant denied having given the officers consent to enter.

**{19}** Defendant denied having ever engaged in trafficking in cocaine or using illegal drugs. Defendant denied any knowledge of the drugs, including the fourteen bindles the officers testified fell out of his wallet, the paraphernalia, or the ledger that was found in his home. Defendant testified he was relaxed until the officers told him he had to accept the charges and made gestures of calling Children, Youth and Families Department (CYFD) to take the children away.

**{20}** Defendant opined that the drugs and paraphernalia belonged to Wilbur, because Wilbur had access to the room where the drugs were found and disappeared the day after Defendant's arrest. The jury convicted Defendant of both charges. This appeal followed.

## DISCUSSION

**I.    Defendant's Conviction for Possession of Drug Paraphernalia Violates His Right to Be Free From Double Jeopardy**

**{21}**    Defendant argues his convictions for possession of cocaine with intent to distribute and possession of drug paraphernalia violate double jeopardy because the jury instructions failed to distinguish the fourteen plastic bindles that fell out of his wallet from the plastic baggies and other forms of drug paraphernalia that were found inside his residence. The State concedes this issue on appeal. While we are not bound to accept the State's concession, *see State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738 (stating appellate courts are not bound by the state's concessions), for the reasons that follow, we agree.

**{22}**    We review double jeopardy claims de novo. *See State v. Gutierrez*, 2011-NMSC-024, ¶ 49, 150 N.M. 232, 258 P.3d 1024. "The New Mexico and United States Constitutions each contain a prohibition that no person be twice put in jeopardy for the same offense." *State v. Armendariz*, 2006-NMSC-036, ¶ 19, 140 N.M. 182, 141 P.3d 526 (internal quotation marks and citations omitted), *overruled on other grounds by State v. Swick*, 2012-NMSC-018, 279 P.3d 747. We engage in double jeopardy analysis in three circumstances: (1) to "protect[] against a second prosecution for the same offense after acquittal," (2) to "protect[] against a second prosecution for the same offense after conviction," and (3) to "protect[] against multiple punishments for the same offense." *Swafford v. State*, 1991-NMSC-043, ¶ 6, 112 N.M. 3, 810 P.2d 1223.

**{23}**    "Multiple punishment problems can arise from both double-description claims, in which a single act results in multiple charges under different criminal statutes, and unit-of-prosecution claims, in which an individual is convicted of multiple violations of the same criminal statute." *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289 (internal quotation marks and citation omitted).

**{24}**    Defendant raises a double-description claim because he is claiming the jury may have relied on his single act of possessing fourteen plastic bindles of cocaine, to convict him of two separate criminal statutes. We apply a two-step inquiry to double-description claims. *See Swafford*, 1991-NMSC-043, ¶ 25. First, we analyze the factual question, "whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates both statutes[,]" and if so, we consider "whether the [L]egislature intended to create separately punishable offenses." *Id.* "If it reasonably can be said that the conduct is unitary, then [we] must move to the second part of the inquiry. Otherwise, if the conduct is separate and distinct, [the] inquiry is at an end." *Id.* ¶ 28.

**A.    Unitary Conduct**

**{25}**    The jury was instructed that in order to convict Defendant of trafficking in a controlled substance, the state had to prove in relevant part that "[D]efendant had cocaine in his possession; [D]efendant knew it was cocaine, or believed it to be

[cocaine; and D]efendant intended to transfer it to another." With regard to the crime of possession of drug paraphernalia, the jury was instructed in relevant part that it had to find that "[D]efendant had in his possession plastic baggies, a digital scale, bowls, and/or Inositol Powder." During closing argument the prosecutor invited the jury to convict Defendant of possession of drug paraphernalia, based on the fourteen "bags" of cocaine that fell out of Defendant's wallet. These were the same fourteen bags of cocaine the prosecutor relied on to support Defendant's conviction for trafficking.

**{26}** Although the jury instruction provided alternative bases to support Defendant's conviction for possession of drug paraphernalia, the general verdict form did not identify which alternatives the jury based its conviction on. Therefore, we presume that each of Defendant's convictions was based on the unitary conduct of possessing fourteen bindles of cocaine and move to the second factor in the *Swafford* analysis. *See State v. Foster*, 1999-NMSC-007, ¶ 28, 126 N.M. 646, 974 P.2d 140 (concluding that the Court "must presume that a conviction under a general verdict requires reversal if the jury is instructed on an alternative basis for the conviction that would result in double jeopardy, and the record does not disclose whether the jury relied on this legally inadequate alternative"), *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683.

### B.     Language of the Statutes and Legislative Intent

**{27}** We next consider whether the Legislature intended to create separately punishable offenses for the same conduct. *See Swafford*, 1991-NMSC-043, ¶ 28 ("If it reasonably can be said that the conduct is unitary, then one must move to the second part of the inquiry."). In construing legislative intent, we first look to the plain language of the statutes at issue to determine whether they "expressly" provide for "multiple punishments for unitary conduct." *Id.* ¶ 30. The statutes at issue here do not expressly state that conviction for one offense shall not preclude conviction for the other. *Compare* NMSA 1978, § 30-31-25.1(A) (2001) (prohibiting drug paraphernalia possession), *with* NMSA 1978, § 30-31-20(A)(3) (2006) (prohibiting possession of cocaine with intent to traffic). Therefore we apply the test set out in *Blockburger v. United States*, 284 U.S. 299 (1932). *See Swafford*, 1991-NMSC-043, ¶ 30.

**{28}** The *Blockburger* test seeks to determine whether there are "two offenses or only one" in prosecutions "where the same act . . . constitutes a violation of two distinct statutory provisions." *State v. Gutierrez*, 2011-NMSC-024, ¶ 56, 150 N.M. 232, 258 P.3d 1024 (internal quotation marks and citation omitted). In making this determination, we consider "whether each [statute] requires proof of a fact which the other does not." *Id.* (internal quotation marks and citation omitted). If all of the elements of one statute are contained within the other statute, then "one statute is subsumed within the other," and our inquiry ends with the conclusion that the Legislature did not intend to punish the same conduct under two different statutes. *Id.* (internal quotation marks and citation omitted). But, if each statute contains an element of proof that is not found in the other, "we presume that the Legislature intended to punish the offenses separately." *Armendariz*, 2006-NMSC-036, ¶ 22.

**{29}** In order to convict Defendant of possession of drug paraphernalia, contrary to Section 30-31-25.1, the State was required to prove in relevant part that Defendant had in his possession drug paraphernalia with intent to "compound, convert, prepare, pack, . . . store, or contain cocaine." The definition of "drug paraphernalia" includes in relevant part, all products and materials of any kind that are intended for use in packaging, storing, containing, or concealing a controlled substance. NMSA 1978, § 30-31-2(V) (2009, amended 2017). Trafficking in a controlled substance required the State to prove in relevant part, that Defendant: (1) had a controlled substance in his possession, in this case, cocaine; (2) he knew or believed it to be a controlled substance; and (3) he intended to transfer the controlled substance to another. Section 30-31-20(A)(3).

**{30}** Each of these two statutes contain elements of proof not contained by the other: the trafficking statute requires proof of possession of a drug or belief that one is possessing a drug, along with intent to transfer the drug, while the possession of drug paraphernalia statute, under the facts of this case, required proof that Defendant possessed a product or material intended to store, package, contain, or conceal a drug, regardless of whether he possessed the drug or had the intent to transfer the drug. Therefore, we could presume that the Legislature intended to punish these two offenses separately. *See Armendariz*, 2006-NMSC-036, ¶ 22 (recognizing under the *Blockburger* test, if each statute requires an element of proof not required by the other, "we presume that the Legislature intended to punish the offense separately").

**{31}** But under the facts of this case, and our opinion in *State v. Almeida*, 2008-NMCA-068, ¶ 11, 144 N.M. 235, 185 P.3d 1085, we recognize that the presumption that the Legislature intended separate punishments is not conclusive and it may be overcome by "other indicia of legislative intent, including the language, history, and subject of the statutes, the social evils sought to be addressed by each statute, and the quantum of punishment prescribed by each statute." *Id.* (internal quotation marks and citation omitted).

**{32}** In *Almeida* we were confronted with a set of facts similar to those at play here, i.e., a defendant was convicted of both possession of a controlled substance and possession of drug paraphernalia for possessing drugs in a plastic baggie. *Id.* ¶ 1. We acknowledged that the prosecutions for drug possession and possession of a controlled substance did not constitute double jeopardy under *Blockburger* because they each required an element of proof not required by the other. *Id.* ¶ 10.

**{33}** However, we nonetheless concluded that the convictions violated the defendant's double jeopardy rights because we did not believe that our Legislature intended pyramid penalties for possessing drugs and drug paraphernalia when the drug paraphernalia in question consisted only of a common, everyday item and was identifiable as paraphernalia only because it was a container for a personal supply of a controlled substance. *Id.* ¶ 18. We concluded that the possession of a plastic baggie to hold drugs merged with the offense of possessing drugs and that the Legislature did not intend to punish them as distinct crimes. *Id.* ¶ 21. We were careful, however, to distinguish this scenario from one in which a baggie of drugs was found next to a pipe. *Id.* ¶ 18

**{34}** The crime of possession of a controlled substance is a lesser included offense of the crime of possession of a controlled substance with intent to distribute. *State v. Quick*, 2009-NMSC-015, ¶ 13, 146 N.M. 80, 206 P.3d 985. The difference between the two crimes is that the crime of possession, Section 30-31-23, does not include the intent element present in the crime of possession with intent to distribute. Possessing the intent to distribute, however, does not alter the requirement of a container of some sort to hold the cocaine—here, corners of plastic baggies—or change the certainty that corners of plastic baggies would not otherwise fall within the list of items identified as drug paraphernalia in Section 30-31-25.1. We discern no reason why our double jeopardy analysis and holding in *Almeida*, would not also apply to convictions for the crime of possession of cocaine with intent to traffic and possession of drug paraphernalia where, as here, the paraphernalia consisted of a common every day household item used as a container to store the controlled substance. Accordingly, we reverse Defendant's conviction for possession of drug paraphernalia and remand to the district court for resentencing.

## II. Defendant Failed to Make a Prima Facie Case of Ineffective Assistance of Counsel

**{35}** Defendant asserts his counsel was ineffective because he failed to: (1) move to suppress the evidence based on a lack of voluntary consent; (2) call a Spanish language expert to assess Agent Salcido's ability to speak Spanish; (3) move for disclosure of the identity of the confidential informant and call the informant as a witness; (4) present a letter written by an immigration attorney and testimony from the immigration attorney; (5) object to improper expert testimony; (6) request an instruction on constructive possession; (7) request an instruction requiring the jury to find that Defendant's admission to owning the tool box was voluntarily made; and (8) request a lesser included offense instruction for simple possession.

**{36}** "The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees . . . the right . . . to the effective assistance of counsel." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 21 P.3d 1032 (internal quotation marks and citation omitted). "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *Id.*

**{37}** "A defendant makes a prima facie case of ineffective assistance despite full and adequate factual support in the record by showing that defense counsel's performance fell below the standard of a reasonably competent attorney and, due to the deficient performance, the defense was prejudiced." *State v. Dylan J.*, 2009-NMCA-027, ¶ 39, 145 N.M. 719, 204 P.3d 44 (internal quotation marks and citation omitted).

**{38}** As to the first prong, "[d]efense counsel's performance is deficient if it falls below an objective standard of reasonableness[,]" usually judged as an action contrary to "that of a reasonably competent attorney." *Id.* ¶ 37. However, "judicial review of the effectiveness of counsel's performance must be highly deferential, and courts should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 50, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted). "While there may be some question as to counsel's tactics and strategy in representing his client, counsel's approach to the defense of his client, even though questionable, does not necessarily amount to ineffective assistance." *State v. Martinez*, 2007-NMCA-160, ¶ 26, 143 N.M. 96, 173 P.3d 18. Therefore, a defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Hunter*, 2006-NMSC-043, ¶ 13, 140 N .M. 406, 143 P.3d 168 (internal quotation marks and citation omitted). "If there is a plausible, rational strategy or tactic to explain counsel's conduct, a prima facie case for ineffective assistance is not made." *Dylan J.*, 2009-NMCA-027, ¶ 39.

**{39}** As to the second prong, "[a] defense is prejudiced if, as a result of the deficient performance, there was a reasonable probability that . . . the result of the trial would have been different." *Id.* ¶ 38 (omission in original) (internal quotation marks and citation omitted). "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks and citation omitted).

Failure to establish either prong of the test defeats a claim of ineffective assistance of counsel. *State v. Grogan*, 2007-NMSC-039, ¶ 24, 142 N.M. 107, 163 P.3d 494.

## 1. Failing to File a Motion to Suppress

**{40}** Defendant contends his counsel rendered ineffective assistance of counsel because he failed to challenge the validity of Defendant's consent to search. The officers testified that after obtaining consent to enter, they discovered a room with various forms of drug paraphernalia and cocaine, and that a subsequent search of Defendant incident to arrest led to the discovery of fourteen bindles of cocaine in his wallet. Defendant argues his counsel should have moved to suppress the evidence based on the unlawful entry into his residence.

**{41}** "Where . . . the ineffective assistance of counsel claim is premised on counsel's failure to move to suppress evidence, [the d]efendant must establish that the facts support the motion to suppress and that a reasonably competent attorney could not have decided that such a motion was unwarranted." *State v. Mosely*, 2014-NMCA-094, ¶ 20, 335 P.3d 244 (internal quotation marks and citation omitted).

**{42}** Defendant argues that his counsel was aware of factual circumstances surrounding the consent that would have supported a motion to suppress and that no reasonably competent attorney would have decided that such a motion was not warranted. In particular Defendant contends that his "consent" could have been

challenged on two grounds: first, he claimed that he did not give consent to the officers to enter and search his residence; and second, he contends that he was a Spanish-speaker and "[i]f [Agent Salcido's] Spanish was only mediocre," Agent Salcido's request to consent to enter and search his residence for contraband while accompanied by three other officers "could have come across as mandatory."

**{43}** Each of Defendant's arguments implicate an exception to the warrant requirement, consent. *See State v. Flores*, 2008-NMCA-074, ¶ 12, 144 N.M. 217, 185 P.3d 1067 (recognizing that a search based upon a valid consent is an exception to the requirement for obtaining a search warrant). The voluntariness of consent is a factual question in which the trial court must weigh the evidence and decide if it is sufficient to clearly and convincingly establish that the consent was voluntary. *State v. Anderson*, 1988-NMCA-033, ¶ 7, 107 N.M. 165, 754 P.2d 542.

**{44}** The voluntariness of consent involves a three-tiered analysis: "(1) there must be clear and positive testimony that the consent was specific and unequivocal[,] (2) the consent must be given without duress or coercion[,] and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights." *State v. Davis*, 2013-NMSC-028, ¶ 14, 304 P.3d 10 (internal quotation marks and citation omitted). "Ultimately, the essential inquiry is whether [the] defendant's will ha[d] been overborne. *Id.* (alteration, internal quotation marks, and citation omitted).

**{45}** We examine the law and the facts to determine if a reasonably competent attorney could have decided that a motion to suppress was unwarranted. Prior to trial the prosecutor filed a motion in limine seeking to preclude the defense from introducing evidence challenging the validity of Defendant's consent to search asserting that the motion would be untimely under Rule 5-212(C) NMRA (providing that "motion[s] to suppress shall be filed no less than sixty . . . days prior to trial, unless upon good cause is shown").

**{46}** The prosecutor asserted that defense counsel explored the validity of Defendant's consent to search during pretrial interviews with the officers but had not filed a motion to suppress. During a hearing on the motion, the district court inquired if the defense intended to argue during opening statement that Defendant did not consent to the search of the home. Defense counsel responded that he was not going to argue that the search was illegal. He also stated it was not key to the defense and did not intend to argue that the officers "manipulated them into letting them into their home" but would mention it because it was part of their story. Defense counsel's responses suggest that he believed Defendant consented to the entry but that there may have been manipulation or that the consent was possibly a result of a language barrier.

**{47}** If Defendant's trial counsel believed prior to Defendant's testimony that Defendant provided consent, there would have been no reason to file a motion to suppress based on a complete lack of consent. *Cf. State v. Stenz*, 1990-NMCA-005, ¶ 7, 109 N.M. 536, 787 P.2d 455 ("A trial counsel is not incompetent for failing to make a motion when the record does not support the motion."). However, we do not reach this

conclusion, because to do so we would have to speculate that prior to trial, Defendant told his counsel that he consented to the entry and search of his residence, which is inapposite to his later trial testimony. See *State v. Astorga*, 2015-NMSC-007, ¶¶ 17, 20, 343 P.3d 1245 (noting that the record is "frequently insufficient to establish whether an action taken by defense counsel was reasonable and refusing to speculate" as to the interpretation of defense counsel's ambiguous statement regarding his failure to litigate a 10-8 call (internal quotation marks and citation omitted)).

**{48}** During trial Agent Salcido testified that he and Sergeant Martinez knocked on Defendant's front door while wearing plain clothes and not displaying their weapons. Agent Salcido testified that he identified himself in Spanish, showed Defendant his badge and credentials, and asked Defendant for permission to enter and search his house for narcotics and firearms. According to all three officers, Defendant invited them inside and gave them verbal permission to search his residence for narcotics. Agent Salcido testified that Defendant was calm, not nervous, and did not appear under duress. Defendant testified that when he answered the door the officers told him they were from ICE, they were looking for someone named Wilbur and all of a sudden they entered his residence without consent.

**{49}** With respect to counsel's failure to file a motion to suppress based on the possibility that the request for consent to enter and search the residence for contraband "could have come across as mandatory" the record is insufficient to demonstrate a prima facie case of ineffective assistance of counsel. Defendant never testified that he provided the officers with consent to enter and search his residence much less that, based on Agent Salcido's Spanish speaking ability, he believed he had no option but to provide consent. Nor did Defendant claim that the presence of the four officers somehow led him to believe he had no option but to consent to the entry and search of his residence. Instead Defendant testified that when he answered the door the officers told him they were from ICE, they were looking for someone named Wilbur, and that officers entered his home without consent. Because Defendant does not direct us to the facts supporting his argument that his consent was coerced he did not meet his burden of showing that his attorney's performance fell below that of a reasonably competent attorney. *See Stenz*, 1990-NMCA-005, ¶ 7.

## 2. Spanish Language Expert

**{50}** Defendant argues he was denied effective assistance of counsel because his trial attorney failed to retain, disclose, and present a Spanish language expert who might have been able to evaluate Agent Salcido's Spanish language skills and render an opinion that Agent Salcido's Spanish language skills were deficient. Our Supreme Court has "expressly rejected the contention that the failure to introduce the testimony of an expert witness constitutes ineffective assistance of counsel per se." *Lytle*, 2001-NMSC-016, ¶ 44. We have generally required a defendant to show that a defense expert was actually available to testify in support of the defense's theory at trial. *See State v. Aragon*, 2009-NMCA-102, ¶ 20, 147 N.M. 26, 216 P.3d 276 ("[W]e have required a defendant to show that an expert would have been—not could have been—

available to testify at trial [for a prima facie case of ineffectiveness].”). Here, Defendant contends the existence of a language barrier between he and Agent Salcido went directly to the voluntariness and legitimacy of his alleged consent to search and admission to owning the tool box and as such the error was prejudicial. Defendant's conjecture regarding what a defense expert might have testified to and the resulting prejudice is purely speculative. There is nothing in the record to indicate that a defense expert was available to assess Agent Salcido's Spanish language skills or that an expert would have opined that Agent Salcido's Spanish language skills were deficient. *See State v. Crain*, 1997-NMCA-101, ¶ 33, 124 N.M. 84, 946 P.2d 1095 (stating that the defendant had not made a prima facie case of ineffective assistance of counsel because the record failed to establish that a defense expert was available to testify in support of the defendant's theory of the case). Therefore, Defendant has failed to demonstrate a prima facie case of ineffective assistance of counsel resulting from his trial counsel's failure to retain, disclose, and present a Spanish language expert.

### 3.    Confidential Informant

**{51}**    Defendant argues his counsel was ineffective because he failed to seek disclosure and present testimony of the confidential informant. Defendant's implicit argument is that the confidential informant would have provided a description of the drug trafficker that did not match Defendant's physical appearance. Again, Defendant's claim of prejudice is based entirely on speculation that the confidential informant would have provided a description of the drug trafficker that did not match Defendant. *See State v. Dartez*, 1998-NMCA-009, ¶ 27 124 N.M. 455, 952 P.2d 450 (holding that counsel's failure to interview or subpoena the confidential informant was not ineffective assistance in absence of any indication that the confidential informant's testimony would have benefitted the defendant). Having failed to display prejudice, Defendant has failed to demonstrate a prima facie case of ineffective assistance of counsel resulting from trial counsel's failure to seek disclosure and present testimony of the confidential informant.

### 4.    Immigration Attorney and Letter

**{52}**    Defendant additionally argues his counsel was ineffective for failing to present testimony from an immigration attorney and for failing to introduce a letter the immigration attorney wrote in 2009, accusing Agent Salcido of using coercion during an encounter with a client who was not Defendant. According to Defendant, “[i]t appears the other individual was also a non-citizen Spanish-speaking suspect in a criminal case, potentially threatened with immigration consequences” similar to what Defendant claims his encounter with the officers in this case was like. The letter is not included in the record, thus effectively preventing us from any review of its actual contents. This Court will not speculate as to its true contents, theories of admissibility, and resulting prejudice to Defendant.

**{53}**    The immigration attorney was identified on Defendant's witness list. The decision whether to call a witness is matter of trial tactics and strategy. *See Lytle*, 2001-NMSC-

016, ¶ 44. The record is devoid of any conversations defense counsel may have had with the immigration attorney or Defendant, leading to his decision not to present the testimony of the immigration attorney. This Court will not attempt to second-guess tactics and strategy of counsel on appeal. We, therefore, conclude Defendant has failed to establish a prima facie case of ineffective assistance of counsel resulting from counsel's failure to admit the letter or present testimony from the immigration attorney.

### 5.      Opinion Testimony

**{54}**    Defendant additionally contends his trial counsel was ineffective because he permitted Sergeant Martinez to provide improper expert opinion testimony. Sergeant Martinez testified that based on his training and experience: (1) the items found in the tool box could be used to traffic and were indicative of a narcotics trafficker, and (2) the ledger looked like a narcotics ledger. "A failure to object does not establish ineffective assistance of counsel." *State v. Rodriguez*, 1988-NMCA-069, ¶ 17, 107 N.M. 611, 762 P.2d 898. "Decisions regarding objections are matters of trial tactics[.]" *State v. Hester*, 1999-NMSC-020, ¶ 15, 127 N.M. 218, 979 P.2d 729.

**{55}**    At the time of trial, Sergeant Martinez was going on seventeen years in law enforcement during which he received years of training in narcotics investigation, and was assigned to the narcotics unit and the narcotics task force. He was also familiar with the packaging and sale of cocaine, and came into contact with narcotics almost on a daily basis. Given Sergeant Martinez' extensive background in law enforcement and training and experience in narcotics investigations, trial counsel as a matter of trial tactics could have rationally decided that an objection would have led the State to qualify Sergeant Martinez as an expert and chose not to risk the district court declaring Sergeant Martinez as an expert.

### 6.      Jury Instructions

### a.      Lesser Included Offense

**{56}**    Defendant contends his counsel provided ineffective assistance by not requesting the lesser included jury instruction for simple possession. We do not agree. Counsel may have determined that the better strategy was an all-or-nothing strategy forcing the jury to choose between possession with intent to traffic in cocaine or acquittal, without the option of finding Defendant guilty of a lesser offense. *State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d 776 (stating that "a prima facie case is not made when a plausible, rational strategy or tactic can explain the conduct of defense counsel" (internal quotation marks and citation omitted)). This is especially so since Defendant sought to convince the jury that Wilbur was the individual trafficking from Defendant's residence and claimed that he had never used illegal drugs and the first time he saw the fourteen bindles of cocaine was when the officers showed them to him.

### b.      Voluntariness of Confession

**{57}** Defendant claims counsel should have requested the jury be instructed on the voluntariness of his confession with UJI 14-5040 NMRA. As a matter of trial strategy Defense counsel may have determined it was better not to draw attention to Defendant's alleged admission of owning everything in the tool box and room where the narcotics and drug paraphernalia were discovered by asking the jury to deliberate on the voluntariness of his admissions and instead focus the jury's attention on Wilbur and Defendant's testimony that he had never seen the drugs or paraphernalia until the officers showed them to him.

### c.        Constructive Possession

**{58}** Finally Defendant claims counsel should have requested a constructive possession instruction that included the last bracketed phrase of UJI 14-3130 NMRA, that addressed the non-exclusive control over the premises where the drugs were found. UJI 14-3130 defines possession of a controlled substance as follows: "A person is in possession of cocaine when he knows it is on his person or in his presence, and he exercises control over it." The instruction provides three optional provisions that may be included with the definition to clarify the method by which possession of a controlled substance may occur depending on the facts of the case. *Id.* In this case, the jury was given a definitional instruction that included the first option, which read as follows:

> A person is in possession of cocaine when he knows it is on his person or in his presence, and he exercises control over it.
>
> Even if the substance is not in his physical presence, he is in possession if he knows where it is, and he exercises control over it.

**{59}** Defendant claims his counsel was ineffective for not requesting the third option which provides: "A person's presence in the vicinity of the substance or his knowledge of the existence or the location of the substance, is not, by itself, possession." UJI 14-3130. Defendant claims the third option would have furthered his defense that the tool box and its contents belonged to Wilbur, the tenant who lived in a detached backyard apartment.

**{60}** The instruction given to the jury required the jury to find more than presence of the cocaine or Defendant's knowledge of its location, but also that Defendant exercised control over it. Therefore the instruction did not allow the jury to find Defendant guilty based on the mere presence of drugs in a room in which he did not have exclusive control. Given Defendant's claim that he was not trafficking cocaine from his residence, did not recognize the tool box or any of the items in the tool box or other evidence until the day the officers showed him the evidence, counsel as a matter of strategy may have determined that the instruction given better aligned with his defense. Therefore, Defendant has failed to demonstrate the prejudice resulting from his counsel's failure to request the third option.

**{61}** Although we hold that Defendant has failed to make a prima facie case of ineffective assistance of counsel on direct appeal, he is not precluded from pursuing these issues in a collateral habeas corpus proceeding. *See State v. Crocco*, 2014-NMSC-016, ¶ 24, 327 P.3d 1068 (noting that "[i]f facts beyond those in the record on appeal could establish a legitimate claim of ineffective assistance of counsel, [the d]efendant may assert it in a habeas corpus proceeding where an adequate factual record can be developed for a court to make a reasoned determination of the issues").

**CONCLUSION**

**{62}** For the foregoing reasons, we reverse and vacate Defendant's conviction for possession of drug paraphernalia, but affirm his conviction for possession of a controlled substance with intent to distribute.

**{63}  IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JULIE J. VARGAS, Judge**